Thomas M. McCain, Petitioner *v.* Commonwealth of Pennsylvania, Department of Education, East Stroudsburg State College, Respondent.

Submitted on briefs November 17, 1982, before Judges ROGERS, WILLIAMS, JR. and CRAIG, sitting as a panel of three.

166

[redacted]

*Michael S. Ramage,* for petitioner.

*Wayne M. Richardson,* Regional Legal Counsel, for respondent.

OPINION BY JUDGE ROGERS, January 13, 1983:

Thomas McCain, an electronic system technician employed by East Stroudsburg State College, appeals from an order of the State Civil Service Commission dismissing his appeal from a three day disciplinary suspension.

Two issues are raised; whether the petitioner's conduct which we are about to describe constituted insubordination within the meaning of the Commission's regulations found at 4 Pa. Code §101.21[1] and whether this conduct was constitutionally protected

---

[1] Section 803 of the Civil Service Act, Act of August 5, 1941, P.L. 752, 71 P.S. §741.803 provides in part that:

SUSPENSION

An appointing authority may for good cause suspend without pay for disciplinary purposes an employe holding a position in the classified service. Such suspension shall not exceed in the aggregate thirty working days in one calendar year. No person shall be suspended because of his race, religion or political, partisan, or labor union affiliation. What shall constitute good cause for suspension may be stated in the rules.

speech on which no disciplinary action could be properly based. The pertinent factual findings of the Commission are as follows:

3. On April 7, 1980, appellant's immediate supervisor convened a counseling session with appellant for the purpose of discussing appellant's job performance.

4. At the close of the meeting, appellant challenged the supervisor's qualifications to counsel him; appellant's shop steward was in attendance at the meeting.

5. Subsequent to the meeting, appellant informed the director of personnel that his immediate supervisor was a liar and incompetent as a supervisor.

6. The general areas of appellant's performance under scrutiny at the meeting had repeatedly been brought to appellant's attention at least one year prior to the meeting.

7. Appellant's display of hostility was without provocation on the part of his supervisor.

The testimonial evidence adduced at a hearing conducted by then Commission Chairman McCarthy was

---

The applicable regulatory provision is as follows:

SUSPENSION

( ) Good cause for suspension shall be a just cause, such as:

(1) insubordination:

(2) habitual lateness in reporting for work;

(3) misconduct amounting to violation of law, rules or lawful and reasonable departmental orders;

(4) intoxication while on duty;

(5) scandalous or disgraceful conduct while on or off duty which may bring the service of the Commonwealth into disrepute; or

(6) Similar substantial reasons.

4 Pa. Code §101.21(a).

that the petitioner's immediate supervisor, Richard Bull, Director of the college's Communications Center, initiated a counselling session on April 7, 1980 for the purpose of discussing with the petitioner four areas of perceived inadequacy in his work performance. The petitioner described the close of this counseling session as follows:

> Petitioner: I asked him at the end of the so called counselling session on what basis do you presume to be qualified to counsel me in anything and he said to me I have the authority as your supervisor to counsel you and I said to him I am not questioning your authority, I question your qualifications. He then said to me that he had the authority as a supervisor and I said but what are your qualifications he stumbled a bit, could not come up with any qualifications and said supervisors who supervise people normally counsel them and that they may take college courses. I asked him if he had any such courses and he said he had taken one.

The petitioner contends that he was not insubordinate because he did not refuse to undertake any task assigned to him and did not disobey any direct order of Mr. Bull. A wealth of case authorities from this and other jurisdictions are cited by the petitioner for the proposition that insubordination necessarily entails the refusal to obey a reasonable directive of the employer. Our examination of these cases reveals that, in fact, they stand for no more than the unexceptional propositions that conduct more or less similar to that here at issue[2] might not be sufficient, when

---

[2] The purpose and nature of Mr. McCain's conversation with the College's director of personnel referred to in the Commission's finding number five was the subject of conflicting testimony at the

measured by the requirements of the Tenure Laws, to support the discharge of a professional educator, or might not constitute disqualifying willful misconduct for the purposes of determining unemployment compensation eligibility, or might not constitute just cause for discharge within the "industrial common law" explicated by an arbitrator's administration of a collective bargaining agreement.

The standard to be applied in the appeal of a suspended civil service employee is none of these. *See Lebanon County Board of Assistance v. Unemployment Compensation Board of Review,* 16 Pa. Commonwealth Ct. 558, 332 A.2d 888 (1975) (distinguishing between civil service Section 807 "just cause" and willful misconduct); *West Middlesex Area School District v. Pennsylvania Labor Relations Board,* 55 Pa. Commonwealth Ct. 404, 423 A.2d 781 (1980) (distinguishing between contractual just cause provisions and the requirements of the Teacher Tenure Laws). The Civil Service Act requires with respect to disciplinary suspensions only that they be for "good cause," a requirement we have described as follows:

> This means that any "personnel action" carried out by the Commonwealth is to be scrutinized in the light of such merit criteria, as has the party failed to properly execute his duties, or his he done an act which hampers or frustrates the execution of same. The criteria must be job-related and in some rational and logical manner touch upon competency and ability.

hearing and we express no view concerning the Commission's resolution of the conflict. We decide only that the petitioner's conduct at the close of the April 7, 1980, counseling session was insubordination and was sufficient to support the appointing authority's decision to impose a three day disciplinary suspension.

*Corder v. Civil Service Commission,* 2 Pa. Commonwealth Ct. 462, 467, 279 A.2d 368, 371 (1971). In this context the concept of insubordination denotes either disobedience or defiance or contempt of authority and is quite literally an unwillingness to submit oneself to the authority of organizational superiors. The petitioner was certainly defiant in this sense and unwilling to submit to the judgment and counsel of Mr. Bull as evidenced by the petitioner's query "on what basis do you presume to be qualified to counsel me in anything."

Supervisors, selected by the appointing authority, may rightfully expect from their subordinates an outward display of respect and courtesy even if such display is bottomed on no more than the participants' relative organizational status. A superior need not countenance disrespect or contumacy from employees who believe, rightly or wrongly, that the supervisor is undeserving of his command position. A subordinate's failure to comply with this standard of behavior is insubordination.

We note that we are not here dealing with a chastened employee's moderate attempt to justify or explain his actions. The petitioner's interrogation of Mr. Bull could not have advanced the discussion and seems not to have been designed to do so but, instead, appears to have been wholly rhetorical.

We also reject the petitioner's contention that his conduct was constitutionally protected speech. The petitioner relies in this regard on *Pickering v. Board of Education,* 391 U.S. 563 (1968) and on *Mount Healthy Board of Education v. Doyle,* 429 U.S. 274 (1977). Both *Pickering* and *Mount Healthy Board of Education* involved teachers discharged as a consequence of their public comments on the matter of

school financial administration. The relevant inquiry in such cases was described in *Pickering* as follows:

[I]t cannot be gainsaid that the State has interests as an employer in regulating the speech of its employees that differ significantly from those it possesses in connection with regulation of the speech of the citizenry in general. The problem in any case is to arrive at a balance between the interests of the teacher, as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees.

*Id.* 391 U.S. at 568. The Court then described the statements at issue as "criticism of the Board's allocation of school funds ..." and noted:

The statements are in no way directed towards any person with whom appellant would normally be in contact in the course of his daily work as a teacher. Thus no question of maintaining either discipline by immediate superiors or harmony among coworkers is presented here.

*Id.* 391 U.S. at 569-570.

No authority is cited which would indicate that, as is involved in this case, an employee's *private* castigation of his immediate superior is constitutionally protected and in our judgment the legitimate interest of the appointing authority in maintaining discipline and harmony among coworkers outweighs an employee's asserted interest as a citizen in bringing to the supervisor's attention the employee's purely gratuitous opinion that his superior is unqualified for the job.

ORDER

AND Now, this 13th day of January, 1983, the order of the State Civil Service Commission in the above-captioned matter is affirmed.