DEPARTMENT OF ENVIRONMENTAL
RESOURCES, Petitioner,

v.

Michael D. BOWMAN, Respondent.

Commonwealth Court of Pennsylvania.

Argued Sept. 14, 1995.
Decided Nov. 20, 1995.
As Amended Dec. 1, 1995.

Virginia J. Davison, Assistant Counsel, for petitioner.

Jeffrey C. Dohrmann for respondent.

Paul R. Beckert, Jr., for intervenor.

Before McGINLEY and FRIEDMAN, JJ., and KELTON, Senior Judge.

FRIEDMAN, Judge.

The Commonwealth of Pennsylvania, Department of Environmental Resources (Department), appeals from an order of the State Civil Service Commission (Commission) sustaining the appeal of Michael D. Bowman

from a non-selection for appointment to a permanent Park Ranger 2 position with the Department and dismissing the Department's appointment of Elsie M. Gibson to that position. We reverse.

In March 1992, the Department posted a notice of job opportunity for the position of permanent Park Ranger 2 at Ricketts Glen State Park (Ricketts Glen). Both Bowman, a seasonal Park Ranger 2 since 1989, and Gibson, a seasonal Park Ranger 2 since 1986, applied for the position.[1] Although other candidates met the minimum education and training qualifications, Bowman and Gibson were the only ones eligible to be interviewed.[2]

In July 1992, Brent Semmel, the Ricketts Glen Supervisor and Bowman's immediate supervisor, interviewed both candidates. Afterward, Semmel completed a Selection Recommendation Summary form, recommending that the Department place Bowman in the permanent Park Ranger 2 position. (R.R. at 369a.) Because Gibson was an affirmative action candidate, Semmel attached an Affirmative Action Certificate, stating "I believe that this candidate [Bowman] is best qualified for the position." (R.R. at 367a–68a.)

However, in October 1992, Donald Mains, Assistant Director for the Department's Bureau of State Parks, directed that the Department place Gibson in the permanent Park Ranger 2 position.[3] On October 28, 1992, Bowman was informed verbally that the Department had selected Gibson. Bowman appealed to the Commission under Section 951(b) of the Civil Service Act (Act) and a hearing was held before three commissioners.[4]

---

1. Bowman began employment at Ricketts Glen as a seasonal Park Ranger 1 in June 1983. Gibson started work at Neshaminy State Park as a seasonal Park Ranger 1 in August 1983. (R.R. at 456a.)

2. Bowman was eligible to be interviewed because he was already an employee at Ricketts Glen. Gibson was eligible through a ranking process which combined seniority and performance evaluation.

3. The Commission's opinion indicates that Mains took this action in October *1993*. However, evidence in the record indicates that Mains acted in October *1992*. (*See* R.R. at 2a–3a.)

4. Section 951(b) of the Act, Act of August 5, 1941, P.L. 752, *as amended*, added by Section 27 of the Act of August 27, 1963, P.L. 1257, 71 P.S. § 741.951(b), states:

> (b) Any person who is aggrieved by an alleged violation of section 905.1 of this act may appeal in writing to the commission within twenty calendar days of the alleged violation. Upon receipt of such notice of appeal, the commission shall promptly schedule and hold a public hearing.

Section 905.1 of the Act, added by Section 25 of the Act of August 27, 1963, P.L. 1257, 71 P.S. § 741.905a, states:

At the hearing, Bowman testified concerning his extensive experience as a seasonal Park Ranger 2 at Ricketts Glen which, he believed, gave him superior qualifications for the position. Semmel likewise testified that, in his opinion, Bowman's actual work experience at Ricketts Glen made him the better candidate. Semmel also testified that after making his recommendation, John Wediger, the Department's Acting Regional Park Manager, told him that "either you or the Park Superintendent at Lackawanna State Park ... have to hire [Gibson] or run the risk of losing the position." (R.R. at 450a.) Some time thereafter, Semmel was told to send in paperwork appointing Gibson to the job.

The Department presented the testimony of Patty Robbins, a Personnel Analyst in the Placement Section of the Department, who described the process used in filling the Park Ranger 2 position. In addition, Sherri Keys, who handled personnel transactions for the Department's Bureau of State Parks, testified that the Department had an affirmative action policy which provided for the selection of an affirmative action candidate where candidates for a position were equally qualified and there was not substantial justification for selecting the non-affirmative action candidate. Keys stated that she examined Semmel's original paperwork and, noticing that Gibson had not been selected, contacted the regional office to request additional written justification for the non-selection of Gibson. When none was forthcoming, Keys reported to Donald Mains that an affirmative action candidate had not been selected for the permanent Park Ranger 2 position and that there was no significant justification for the non-selection. Mains testified that he contacted Wediger and told him that without substantial justification for the selection of Bowman, the Department had to act affirmatively and choose Gibson.

The Commission[5] found that, based on Bowman's nine years of work at Ricketts Glen, Bowman possessed clearly superior qualifying experience for appointment to the permanent Park Ranger 2 position; in that regard, the Commission stated that there is no evidence on record that Gibson was *equally* qualified for the position. The Commission determined that sex was the only factor in the decision to hire Gibson and concluded therefrom that the Department had improperly discriminated against Bowman on that basis. Thus, the Commission sustained Bowman's appeal.

■ On appeal to this court,[6] the Department argues that the record lacks substantial evidence to support the Commission's finding that Bowman and Gibson were not equally qualified for the permanent Park Ranger 2 position and its conclusion that the Department's affirmative action policy was merely a pretext for sex discrimination.[7]

■ In analyzing claims of sex discrimination arising under Section 905.1 of the Act, this court has adopted the standard of proof originally set forth by our Supreme Court in *Allegheny Housing Rehabilitation Corp. v. Pennsylvania Human Relations Commission,* 516 Pa. 124, 532 A.2d 315 (1987). This standard of proof first requires that the com-

No officer or employe of the Commonwealth shall discriminate against any person in recruitment, examination, appointment, training, promotion, retention or any other personnel action with respect to the classified service because of political or religious opinions or affiliations because of labor union affiliations or because of race, national origin or other non-merit factors.

5. The panel of commissioners decided the case by a 2–1 vote. Commissioners Elizabeth H. Kury and Charles J. Lieberth represented the majority; Chairperson Ethel S. Barnett dissented.

6. Where both parties have presented evidence, our scope of review in a civil service case is limited to a determination of whether constitutional rights have been violated, errors of law have been committed, or whether the necessary findings of the Commission are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704; *Wanamaker v. Pennsylvania Liquor Control Board,* 148 Pa.Cmwlth. 541, 611 A.2d 1368 (1992).

7. The Department also contends that (1) the Commission improperly changed the qualifications for the permanent Park Ranger 2 position to include actual work experience at Ricketts Glen and (2) Bowman's appeal was improperly brought under Section 951(b) of the Act. However, because of our disposition of the first issue, we need not address these matters.

**502** 

plainant make out a prima facie case of discrimination by producing sufficient evidence which, if believed and unexplained, indicates that more likely than not discrimination has occurred.[8] *Department of Health v. Nwogwugwu,* 141 Pa.Cmwlth. 33, 594 A.2d 847 (1991). A sex discrimination charge can be sustained by proof of the subjective intent of the alleged discriminator, and one way to prove intent to discriminate is to show that the appointing authority promoted the less qualified applicant.[9] *Lynch v. Department of Public Welfare,* 30 Pa.Cmwlth. 235, 373 A.2d 469 (1977).

The Department does not dispute that Bowman established a prima facie case here. Indeed, Bowman presented evidence that after Semmel interviewed both candidates, Semmel recommended that the Department select Bowman for the Park Ranger 2 position because, in Semmel's opinion, Bowman was better qualified. However, the Department rejected Semmel's recommendation and directed that Semmel hire Gibson instead of Bowman. *If believed and unexplained,* such evidence indicates that more likely than not discrimination occurred. Thus, Bowman established a prima facie case of sex discrimination.

 When the initial burden of proof is met, the burden then shifts to the appointing authority to clearly advance a legitimate nondiscriminatory reason for the personnel action.[10] *Nwogwugwu.* The existence of an affirmative action plan provides such a nondiscriminatory reason. *Johnson v. Transportation Agency,* 480 U.S. 616, 107 S.Ct. 1442, 94 L.Ed.2d 615 (1987). Here, the Department presented evidence that it directed the selection of Gibson pursuant to a valid affirmative action plan. Thus, the Department advanced a non-discriminatory reason

for the selection of Gibson for the Park Ranger 2 position.

 Once the prima facie case is rebutted, the complainant must then demonstrate, by a preponderance of the evidence, that the proffered reason is merely a pretext. *Nwogwugwu.* Where an employer offers an affirmative action plan as the basis for the employer's decision, the complainant must prove that "the employer's justification is pretextual and the plan is invalid." *Johnson,* 480 U.S. at 626, 107 S.Ct. at 1449. Here, the Commission found that because Bowman possessed superior qualifications to Gibson, the candidates were not *equally* qualified and, thus, the Department's reliance on the affirmative action plan was a pretext for sex discrimination. However, the Department contends that the record does not contain substantial evidence to support the Commission's finding that Bowman and Gibson were not equally qualified for the Park Ranger 2 position. We agree.

Bowman and Gibson each have nine years of work experience at a state park. Bowman's work experience is at Ricketts Glen, a 13,050–acre park which offers the following activities: boating, fishing, swimming, picnicking, camping, hiking, hunting, winter sports and bridle trails. Gibson's work experience is at Neshaminy State Park (Neshaminy), a 330.17–acre park offering boating, fishing, picnicking and swimming. A reasonable person might conclude from this evidence alone that Bowman was better qualified for the Ricketts Glen position. However, Bowman's work experience at Ricketts Glen is only one factor that a reasonable person would consider in determining whether Bowman is better qualified for the Park Ranger 2 position.

8. The burden of establishing a prima facie case cannot be an onerous one. *Department of Health v. Nwogwugwu,* 141 Pa.Cmwlth. 33, 594 A.2d 847 (1991). When the complainant makes out a prima facie case, a presumption of discrimination arises which, if not rebutted, becomes determinative of the factual issue of the case. *Id.*

9. Indeed, if the appointing authority chooses someone other than the best qualified person from several applicants for a position, the inference is strong, if not irresistible, that he was

motivated by some non-merit factor. *Lynch v. Department of Public Welfare,* 30 Pa.Cmwlth. 235, 373 A.2d 469 (1977).

10. This burden does not require an employer to persuade the factfinder that it was actually motivated by the proffered reason or reasons; all that is required is that the employer's evidence raise a genuine issue of fact as to whether it discriminated against the complainant. *Nwogwugwu.*

A permanent Park Ranger 2 must protect the buildings, structures, equipment, facilities, tools and natural resources of the park from fire, theft, vandalism and destruction. (R.R. at 261a.) In performing these duties, a Park Ranger 2, unlike a Park Ranger 1, is authorized to enforce the Crimes Code, Game Law, Fish Law and Park Rules. (R.R. at 27a.) In this case, we note that Gibson has been a seasonal Park Ranger 2 since 1986, but Bowman only became a seasonal Park Ranger 2 in 1989. Thus, Gibson has about three years more enforcement experience than Bowman. Bowman, who has the burden of proof here, has not presented evidence to show that Gibson's enforcement experience does not make her better qualified for the Park Ranger 2 position at Ricketts Glen. We believe that Gibson's enforcement experience makes her, at least, equally qualified.[11]

Accordingly, we reverse.

### ORDER

AND NOW, this 20th day of November, 1995, the order of the State Civil Service Commission, dated October 7, 1994, is reversed.

Stephen S. Pennington, for petitioner.

Frayda Kamber, Deputy Chief Counsel, for respondent.

Before PELLEGRINI and KELLEY, JJ., and KELTON, Senior Judge.

---

11. Moreover, we note that two *equally* qualified candidates do not have to possess *identical* work experience, training, education, etc. If this were the case, we doubt that there would ever be two equally qualified candidates and, therefore, no affirmative action candidate could ever be selected.