**DEPARTMENT OF GENERAL SERVICES, Petitioner**

v.

**CIVIL SERVICE COMMISSION (MADDOX), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Jan. 16, 1998.

Decided March 18, 1998.

Peter M. Good, Harrisburg, for petitioner.

Andrew J. Ostrowski, Harrisburg, for respondent.

Before COLINS, President Judge, and SMITH, Judge, and LORD, Senior Judge.

LORD, Senior Judge.

The Commonwealth Department of General Services (Department) petitions for review of a State Civil Service Commission (Commission) decision sustaining the appeal of Madie A. Maddox, thereby vacating her three-day suspension from employment and reinstating her for those days with full backpay and all benefits. Another, earlier personnel action by the Department involving Maddox is the subject of a Department petition for review, which petition we also dispose of today.[1]

By letter dated July 13, 1995, Maddox was suspended for three days from her position as a Business Enterprise Analyst 2 in the Department's Office of Minority and Women Business Enterprises (Office). The reasons given to Maddox for her suspension were insubordination and making false accusations against the director of the Office, Donetta D'Innocenzo. Maddox's immediate supervisor at the time of the incidents precipitating her suspension was John Dunlap; Dunlap's supervisor was D'Innocenzo, who was appointed director on May 30, 1995. A day or two after beginning her appointment, D'Innocenzo and Dunlap attended a presentation Maddox was giving to potential Commonwealth contract bidders. After the presentation, D'Innocenzo advised Dunlap that Maddox made her presentation in a threatening tone and a discourteous manner. Dunlap informed Maddox of D'Innocenzo's comments. On June 1, 1995, Maddox initiated a meeting with D'Innocenzo in her office to discuss the comments made. On June 20, Maddox initiated another meeting to discuss an earlier office presentation. During that meeting, D'Innocenzo mentioned an incident allegedly reported to her in which Maddox, in front of co-workers, upbraided and degraded a temporary clerical employee. Also during that meeting, Maddox advised D'Innocenzo that she had previously filed work-

1. *See Department of General Services v. Maddox,* 707 A.2d 1207 (Pa.Cmwlth.1998).

place sexual harassment charges against the former director of the Office.

The following day, D'Innocenzo issued a written reprimand, in the form of a memorandum, sending a copy to Maddox's supervisor, and asserting that the bases for the reprimand were that, at the June 20 meeting, certain of Maddox's comments were "disrespectful and insubordinate;" that an incident in which Maddox raised her voice and publicly degraded another employee was "disrespectful to her and others in the office;" that Maddox "abrasively entered" D'Innocenzo's office on June 1 and made comments during the discussion that were inappropriate; that D'Innocenzo expected Maddox "to carry out professional courteous presentations ... with other agencies and vendors" and that failure to do so would result in disciplinary action. The memorandum also indicated to Maddox that her personnel file contained "a history of abrasive, rude behavior to other [office] staff, outside agency staff and your supervisors." (Memorandum of June 21, 1995, Notice of Reprimand, [Department] Exhibit No. AA–1).

Maddox responded on July 6, 1995 to D'Innocenzo in a three-page memorandum, the subject of which was a "Rebuttal of Reprimand that was received Wednesday, June 21, 1995." In it, Maddox asserted that D'Innocenzo "incited ... to intentionally and deliberately, with malice aforethought, belittle, intimidate and harass me ... through the untruths mentioned in your reprimand." Maddox also stated, "That I initiated this discussion is the only truth you told in your reprimand." Maddox specifically disputed all the incidents mentioned in the reprimand, including the alleged incident between Maddox and the temporary employee. Maddox ended this particular refutation of D'Innocenzo's version of events with the statement "The truth appears as very, very repulsive to people who do not practice it." Maddox characterized D'Innocenzo's version of Maddox's initiation of their June 20, 1995 meeting as "a complete fabrication." Maddox also accused D'Innocenzo of attempting to use an unofficial personal file on Maddox "to justify your false evaluation" and "to harass me." Maddox mentioned an incident where she believed D'Innocenzo acted "arrogantly" and characterized D'Innocenzo's actions as "contrary to the actions of any policy and practice dictated by the Commonwealth for a Director regarding an employee they [sic] supervise...." (Memorandum of July 6, 1995, [Department] Exhibit No. AA–2).

The Commission characterized this document as a statement of Maddox's "objection to the reprimand statements regarding the June 20, 1995 discussion;" Maddox's "version of the June 20 discussion, complete with her detailed disagreement with each statement in the reprimand;" Maddox's "denial of the accuracy of the quotations [attributed to Maddox] in the reprimand and her assertions that they were made in retaliation for [Maddox's] earlier sexual harassment charges against the appointing authority." (Finding of Fact No. 10, Commission decision of May 19, 1997). The Commission further found that D'Innocenzo forwarded the rebuttal memo to her supervisor, the Department's Deputy Secretary for Administration, who then referred it to the Department personnel office for disciplinary action. (Finding of Fact No. 11).

On July 13, 1995, John R. McCarty, Deputy Secretary for Administration of the Department, issued a letter to Maddox informing her of her three-day suspension and advising her (with the appropriate forms enclosed) of her right to challenge that action. In that letter, McCarty acknowledged receiving Maddox's rebuttal memo from D'Innocenzo and stated that "[y]our actions were both disrespectful and insubordinate." McCarty's letter referred to the instances in Maddox's memo accusing D'Innocenzo of untruths and "complete fabrication," as well as to instances challenging D'Innocenzo's authority. The letter concluded:

Accordingly, you are hereby suspended without pay from your Civil Service position as a Business Enterprise Analyst 2, regular employe, in the Minority and Women Business Enterprise Office for three workdays, effective July 18, 1995. You are also advised that any recurrence of this type of conduct will result in more

severe disciplinary action, including termination of your employment.

([Department] Exhibit A).

The Commission heard the testimony of D'Innocenzo, Gregory Green, the personnel officer for the Department, and McCarty in support of the Department's claim of just cause for suspension. The Commission also heard the testimony of Maddox in opposition to the Department and in support of her claim that the suspension was discriminatory and retaliatory.

The Commission noted that no evidence was presented on Department procedure for refuting written reprimands, but assumed that written rebuttals by those given reprimands were permitted. The Commission considered the testimony of D'Innocenzo and Maddox, which centered largely on the events which led D'Innocenzo to issue her reprimand and Maddox to rebut it. On this testimony, the Commission found "[Maddox's] testimony, relative to the events of the June 1 and June 20 meetings between herself and D'Innocenzo, credible." The Commission then stated,

> [h]aving so found, [Maddox's] statements in the rebuttal must be deemed statements in defense of herself, we, therefore, specifically reject the [Department's] portrayal of these statements as either disrespectful or insubordinate.... Having found [Maddox's] rebuttal a more accurate (albeit tactless) representation of events than the reprimand, we further find that the suspension ... has not been supported by evidence establishing good cause for suspension.

(Commission decision, pp. 10–11).

The Commission also found credible Maddox's assertion that she made D'Innocenzo aware of the earlier challenge to the Department's personnel actions. The Commission

then stated that the Department's "admitted failure to examine the accuracy of the statements in either the reprimand or the rebuttal ... leads us to conclude that the suspension was, in fact, taken in retaliation for [Maddox's] prior challenges." (Commission decision, pp. 11–12). It therefore vacated the suspension and ordered reinstatement of lost wages and employment for the three-day period.

■ On appeal from this decision, the Department contends the Commission's findings of fact are not supported by the evidence and that it erred as a matter of law in the conclusion that Maddox's suspension was not for good cause. We agree.

In *McCain v. Department of Education,* 71 Pa.Cmwlth. 165, 454 A.2d 667 (1983), we acknowledged that the authority provided by the Civil Service Act [2] to suspend a protected employee for disciplinary purposes requires that the criteria for "good cause" be job-related and touch in some logical and reasonable manner on that employee's competence and ability. In that case, we stated:

> Supervisors, selected by the appointing authority, may rightfully expect from their subordinates an outward display of respect and courtesy even if such display is bottomed on no more than the participants' relative organizational status. A superior need not countenance disrespect or contumacy from employees who believe, rightly or wrongly, that the supervisor is undeserving of his command position. A subordinate's failure to comply with this standard of behavior is insubordination.

*Id.,* 454 A.2d at 670.[3]

The Commission found that Maddox's rebuttal contained a denial of the accuracy of the quotation stated in the reprimand (Finding of Fact No. 10(b)), blandly characterizing

---

**2.** Act of August 5, 1941, P.L. 752, *as amended,* 71 P.S. §§ 741.1–741.1005.

**3.** In another context, we have long held that insubordination constitutes justification for discharge, *Nesmith v. Unemployment Compensation Board of Review,* 43 Pa.Cmwlth. 579, 402 A.2d 1132 (1979), though not always necessarily constituting willful misconduct disqualifying one from unemployment compensation. *Breininger v. Unemployment Compensation Board of Review,*

103 Pa.Cmwlth. 502, 520 A.2d 949 (1987). Specifically, in *Costa v. Unemployment Compensation Board of Review,* 31 Pa.Cmwlth. 7, 374 A.2d 1012 (1977), we held that a claimant's act of calling his employer a liar without justifiable provocation constituted willful misconduct. *But see Boyer v. Unemployment Compensation Board of Review,* 499 Pa. 552, 454 A.2d 524 (1982) (Flaherty, J. now C.J. and McDermott, J. dissenting).

the rebuttal memorandum as "a more accurate (albeit tactless) representation of events than the reprimand." (Commission decision, p. 11). Notwithstanding the relative accuracy of the documents, we judge the accusations of untruths, of "a complete fabrication," of malicious harassment and intimidation, and of failure to "practice the truth" contained in Maddox's rebuttal to be something considerably more than tactless. Statements such as those Maddox made cannot simply or fairly be described as mere "denials of the accuracy" of the statements made, but must be seen, as the Department contends, as attacks on the overall credibility and character of her supervisor.

Even if, as the Commission found, the supervisor's reprimand was inaccurate, such a shortcoming does not give license to an employee to challenge a supervisor's authority or to characterize a co-worker as malicious, and a person with no regard for the truth. It must be remembered that the Commission did not find that D'Innocenzo in fact attempted to harass Maddox or create a hostile atmosphere. It did not find that D'Innocenzo castigated Maddox in front of co-workers, or that D'Innocenzo made public the written reprimand. Nor was it found that Maddox's rebuttal was an immediate, reactive outburst in response to provocation. Certainly, an employee has recourse for a reprimand based on inaccuracies; that recourse is not to impugn the character of a co-worker, however. Such a course of action, involving personal attacks, falls below the standard of conduct an employer may rightly expect. Thus, we cannot agree with the Commission's statements that Maddox's "statements in the rebuttal must be deemed statements in defense of herself; we, therefore specifically reject the Department's portrayal of these statements as either disrespectful or insubordinate."

Notwithstanding that Maddox's rebuttal was a more accurate description of the events that transpired, no one disputes that two of the three incidents described in D'Innocenzo's reprimand—the June 1 and June 20 discussions—actually transpired. As a result of what *did* transpire, D'Innocenzo, rightly or wrongly, felt compelled to issue a written reprimand. Maddox, after some two weeks contemplation and consultation with her attorney (Notes of Testimony, (N.T.), May 15, 1996, p. 103), then chose to respond to that reprimand with a statement that was discourteous, accusatory and questioning of her supervisor's authority. Her supervisor forwarded that statement to the Department's Deputy Secretary for Administration, who testified that he found Maddox's statement inappropriate and referred it to personnel staff. On the recommendation of that staff, McCarty suspended Maddox for three days.

We are frankly bemused by the following statement of the Commission:

Also found credible by this Commission is appellant's testimony that she, prior to the issuance of the reprimand, apprised D'Innocenzo of her earlier challenges to actions of the appointing authority. (N.T. pp. 98–99). The appointing authority's admitted failure to examine the accuracy of the statements in either the reprimand or the rebuttal (N.T. pp. 66–67, 81) leads us to conclude that the suspension was, in fact, taken in retaliation for [Maddox's] prior challenges.

(Commission decision, pp. 11–12).

Apart from the absence of any other evidence of retaliatory intent, there is no admission by the Department that it did not investigate the accuracy of D'Innocenzo's or Maddox's statements. In fact, the testimony directly undermines this proposition.

Gregory Green, the personnel officer, testified that, following Department's guidelines, he notified Maddox that the Department was reviewing her conduct as a result of the rebuttal and that a pre-disciplinary hearing would take place; that he and a Department attorney met with Maddox at a pre-disciplinary conference; that Maddox was represented by an attorney at that conference; and that he talked also with D'Innocenzo. Finally, Green testified that, based on Maddox's explanation of events, he recommended to McCarty a three-day suspension. (N.T., 5/15/96, pp. 61–64). McCarty testified that he previously referred Maddox's memo to Green with instructions to "handle it in the normal course," and that he accepted the

recommendation of those charged with investigating the incident without change. (N.T., pp. 76–77). The Commission cites testimony in which Green stated he did not speak with the temporary employee who was said to be publicly upbraided by Maddox. It also cites testimony in which McCarty forthrightly testified that he did not involve himself in the pre-disciplinary hearing or follow up with his own investigation of events after personnel made its recommendation. This testimony is not, however, an admission or even a suggestion that the Department did not examine the accuracy of the statements contained in the reprimand or rebuttal. Without more, we are unable to make the leap of logic the Commission made that, since Maddox was suspended *after* informing. D'Innocenzo of her previous challenges to the Department's actions, Maddox was suspended *because* of that information, in retaliation. In sum, having thoroughly reviewed the record, we find no evidentiary support for the Commission's finding in this regard.

We conclude that the Commission erred in rejecting the Department's "portrayal of [the] statements [contained in Maddox's memo] as either disrespectful or insubordinate" on the grounds that they were "statements in defense of herself." We reject the suggestion that an employee may be disrespectful and insubordinate so long as she is defending herself. We also find no evidentiary support for the finding that Maddox's suspension was retaliatory. Accordingly, we will reverse the Commission's decision.

### *ORDER*

AND NOW, this 18th day of March, 1998, it is hereby Ordered that the May 19, 1997 Decision and Order of the State Civil Service Commission (Appeal No. 18837), in the above captioned matter is reversed.