Terry M. BRUGGEMAN, Petitioner,

v.

STATE CIVIL SERVICE COMMIS-SION (DEPARTMENT OF CORREC-TIONS SCI–HUNTINGDON), Respondent.

Donald Corley, Petitioner,

v.

State Civil Service Commission (Department of Corrections SCI–Huntingdon), Respondent.

Commonwealth Court of Pennsylvania.

Argued Dec. 7, 2000.
Decided Feb. 14, 2001.

Gary L. Kelley, Harrisburg, for petitioners.

Robin M. Lewis, Camp Hill, for respondent.

Before DOYLE, President Judge, SMITH, Judge, and McCLOSKEY, Senior Judge.

SMITH, Judge.

Correctional Officers Terry M. Bruggeman (Bruggeman) and Donald Corley (Corley) petition this Court for review of the May 23, 2000 adjudications and orders of the State Civil Service Commission (Commission) dismissing their appeals which challenged the five-day suspension of each by the Department of Corrections (Department). Bruggeman and Corley were each employed as a Corrections Officer 1 at the State Correctional Institution at Huntingdon (SCI–Huntingdon). They were suspended from their jobs after an investigation into the August 2, 1999 escape of Norman Johnson, an inmate housed at SCI–Huntingdon. These two cases have been consolidated for disposition.

I

Bruggeman and Corley were suspended for their failure to follow policies and procedures for a valid and proper count of inmates, specifically for failing to see flesh or movement of inmate Johnson during an official inmate count. Their statement of questions presented to this Court includes whether the Commission erred as a matter of law when it concluded that the record contained substantial evidence to support the Department's five-day suspensions and whether the Commission erred when it concluded that three other correctional officers referenced in the appeal (Smith, Justice and McCoy) were not similarly situated to Bruggeman and Corley inasmuch as the other officers were charged also with responsibility for observing inmate flesh or movement during their inmate counts.

Bruggeman and Corley were assigned to work the 10:00 p.m. to 6:00 a.m. shift from August 1 to August 2, 1999 at the Restricted Housing Unit (RHU)[1] at SCI–Hunting-

---

1. A restricted housing unit is an area within the correctional facility used to house inmates for reasons of "self-protection, for the protection of others or for administrative reasons

don. According to post orders in place at the facility, correctional officers on duty during that shift were required to conduct official counts of inmates at 1:00 a.m. and 5:00 a.m. Post orders are guidelines for correctional officers assigned to a particular job that provide information on procedures to be performed, general practices to be followed and specific and special routines germane to a particular post. The officer conducting the official count was required to count each inmate in the section and record the number on an official ticket, which the officer was required to sign and turn over to the block sergeant. Correctional officers were instructed during basic training that they must see inmate flesh or movement when counting each inmate as present in his cell. In addition to inmate counts, the post orders required the correctional officers to conduct tier checks of the facility at irregular intervals.[2]

Bruggeman signed a count ticket indicating that he conducted the 1:00 a.m. inmate count on August 2, 1999 although he had actually conducted the count at 10:00 p.m., three hours earlier than its scheduled time. No inmate count was actually conducted at 1:00 a.m. Corley conducted a tier check at 1:00 a.m. and the 5:00 a.m. inmate count. Johnson was housed within G block of the RHU where Bruggeman and Corley were working. The inmate escaped on the morning of August 2, 1999. Following an investigation, the Department filed disciplinary charges against Bruggeman and Corley and another correctional officer.

Bruggeman and Corley were afforded the opportunity to rebut the charges against them at pre-disciplinary conferences held on September 15 and September 23, 1999. Thereafter, the Department sent letters dated October 27, 1999 notifying each officer that he would be suspended for five days.[3] Bruggeman and Corley appealed pursuant to Sections 951(a) and (b) of the Civil Service Act (Act)[4] seeking

such as awaiting transfer or inmates who may pose an exceptional security risk." N.T., Major James Grace, at p. 101.

2. A tier check is a round of a particular area or "tier" for the purpose of ensuring general security. Tier checks are less formal than inmate counts. Although the officer is required to verify the presence of an inmate, there is not a formalized count in that the officer is not required to certify the count. N.T., Major Grace, at pp. 102–104.

3. Specifically, the letters stated:
[A] Pre Disciplinary Conference (PDC) was held to afford you the opportunity to respond to the charge(s) of: *Violation of the Department of Corrections Code of Ethics: Section B, Rule # 31*, which states, 'Corrections Officers are to read, sign and fully comply with all post orders,' *Violation of the SCIH RHU Post Orders, C.4 (Count)* which states: 'Five routinely scheduled counts shall be taken daily at 0100, 0530, 1000, 1600 and 2100 hours. The procedures for conducting counts delineated in the SCIH Directive 6.3.8 HUN1 'Inmate

Count at SCIH' shall be followed by all officers except that RHU inmates will not be required to stand up for the 1600 and 2100 hour counts.' That directive also dictates that the officer must account for flesh or movement when counting. Specific charges allege that you violated the Count Procedures by counting at a non-scheduled *time and did not account for flesh or movement in so doing.*
The Committee found you guilty of failing to account for flesh or movement when counting. Training you receive during basic training does indicate that you should account for flesh and movement when counting. The Department does not consider hair to be flesh.

4. Act of August 5, 1941, P.L. 752, *as amended,* added by Section 27 of the Act of August 27, 1963, P.L. 1257, 71 P.S. § 741.951(a) and (b). Under subsection (a), which provides for an appeal of a suspension for cause, the Department bears the burden of proof. Under subsection (b), which provides for an appeal of a personnel action based on discrimination pro-

reinstatement of time lost for the suspension, restitution of lost wages and purging of the incident from their personnel files. Both officers alleged that they were disciplined pursuant to a policy that had been revised and instituted after Johnson escaped and that they were discriminated against in that the three other officers similarly situated were not disciplined.

A consolidated hearing was held on February 3, 2000 at which both Bruggeman and Corley appeared and testified. The Department presented four witnesses: Michael Leidy, Curriculum Development Supervisor; John Markel, Special Investigator 2, Office of Professional Responsibility; Major James Grace, Supervisor of the security office at SCI–Huntingdon; and Stephen H. Dougherty, Personnel Director for SCI–Huntingdon. The parties stipulated that the Department was not suspending Bruggeman and Corley for failure to conduct the count at the proper time. Following the hearing, the Commission dismissed the appeals and sustained the five-day suspensions. The Commission concluded that the Department had met its burden in presenting evidence which established good cause for the suspensions and that the officers failed to present evidence demonstrating that the Department discriminated against them in violation of Section 905.1 of the Act, 71 P.S. § 741.905a.

## II

█ Section 803 of the Act, 71 P.S. § 741.803, requires that disciplinary suspensions without pay be for good cause. Regulations promulgated thereunder have defined good cause as including misconduct amounting to a violation of law or rule or of lawful and reasonable Department orders. 4 Pa.Code § 101.21(a). This

Court has held that good cause must relate to an employee's competence and ability to perform his or her job duties, *State Correctional Institution at Graterford, Department of Corrections v. Ehnot,* 110 Pa. Cmwlth. 608, 532 A.2d 1262 (1987), or must result from conduct that hampers or frustrates the execution of the employee's duties. *McCain v. Department of Education, East Stroudsburg State College,* 71 Pa.Cmwlth. 165, 454 A.2d 667 (1983). This Court's review is limited to determining whether the Commission's orders are in accord with the law, whether the necessary findings of fact are supported by substantial evidence or whether constitutional rights have been violated. *Bazargani v. State Civil Service Commission (Haverford State Hospital),* 711 A.2d 529 (1998).

At the hearing before the Commission, Major Grace testified that the post orders required officers to conduct official inmate counts and that in order to properly conduct the counts officers must see flesh or movement of the inmate. Dougherty testified that Bruggeman and Corley participated in basic training entitled "Security Awareness" and in an in-service training course entitled "Fundamentals of Security." Leidy testified that both the Security Awareness and the Fundamentals of Security curricula included training on the proper method of conducting inmate counts, specifically that the staff must see flesh or movement to record that an inmate is present. N.T., pp. 53, 58. Markel conducted the Department's investigation following Johnson's escape. In his August 9, 1999 written statement to Markel, Bruggeman acknowledged that he did not see movement in Johnson's cell but thought he saw Johnson's head and that he had received training that he must see flesh or

hibited by Section 905.1 of the Act, added by Section 25 of the Act of August 27, 1963, P.L.

1257, 71 P.S. § 741.905a, the party appealing the action has the burden of proof.

movement to count the inmate present. In his August 11, 1999 written statement to Markel, Corley acknowledged that after 2:00 a.m. on August 2, 1999 he saw only what appeared to be Johnson sleeping in his bunk with his hair sticking out from under the covers.

■ Based upon a review of this evidence, the Court concludes that substantial evidence supports the Commission's finding that Bruggeman failed to properly conduct the official inmate count. Substantial evidence likewise supports the Commission's finding that Corley did not comply with proper procedures when accounting for inmate Johnson during the 5:00 a.m. August 2, 1999 inmate count.[5] Moreover, the Department's curriculum development supervisor established what training Bruggeman and Corley received and that they were instructed on the proper method for conducting an official inmate count. Thus the Court discerns no error by the Commission in this regard.

■ Next Bruggeman and Corley contend that they were discriminated against in that the three other correctional officers responsible for accounting for the presence of inmates were not similarly disciplined. Although the burden of proof for establishing a prima facie case of employment discrimination is not an onerous one, the burden nevertheless rests with the employee alleging the discrimination. *Department of Environmental Resources v. Bowman*, 667 A.2d 499 (Pa.Cmwlth.1995), *rev'd in part*, 549 Pa. 65, 700 A.2d 427 (1997). An employee alleging discrimination must present some affirmative evidence in support of the allegation, and the Commission may not infer discrimination. *Masneri v. State Civil Service Commission (Western Center, Department of Public Welfare)*, 712 A.2d 821 (Pa.Cmwlth. 1998). In particular, an employee claiming disparate treatment must demonstrate that he or she was treated differently than other employees similarly situated. *Department of Health v. Nwogwugwu*, 141 Pa.Cmwlth. 33, 594 A.2d 847 (1991).

■ Bruggeman and Corley failed to affirmatively establish before the Commission that the other three correctional officers were similarly situated. Major Grace testified that the other officers were responsible only for conducting tier checks rather than official inmate counts and that the two counts are different. He explained that inmate counts require a higher standard of care from correctional officers in verifying the presence of inmates and that tier checks are performed at irregular intervals. The Commission found Major Grace's testimony to be credible and persuasive and thus held that Bruggeman and Corley were not similarly situated to the three other officers who they claim were equally responsible for ascertaining the presence of Johnson in his cell. As factfinder, the Commission has authority to make credibility determinations, and this Court is bound by such determinations where they are supported by substantial evidence. *Masneri*. Because the Commission's findings are supported by substantial evidence and it did not err in failing to conclude that Bruggeman and Corley presented affirmative evidence of discrimination, the Court affirms both orders of the Commission.

5. The argument raised by Bruggeman and Corley that they were disciplined according to post orders that were changed after Johnson's escape is without merit. Although Bruggeman and Corley assert that the "flesh or movement" language was not contained in the written policy in effect on August 1 and August 2, 1999, neither officer denied that he was trained that the proper method of conducting a count of inmates is to see flesh or movement.

## ORDER

AND NOW, this 14th day of February, 2001, the orders of the State Civil Service Commission in the above-captioned matters are affirmed.