IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Sandra L. Tate-Burns,             :
                                     : No. 1304 C.D. 2015
                 Petitioner   : Submitted: June 3, 2016
                                       :
                v.                :
                                       :
State Civil Service Commission   :
(Erie County Office of Children   :
and Youth),                  :
                                       :
                Respondent   :


BEFORE:   HONORABLE P. KEVIN BROBSON, Judge
              HONORABLE MICHAEL H. WOJCIK, Judge
              HONORABLE JAMES GARDNER COLINS, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WOJCIK                    FILED: November 10, 2016


Sandra L. Tate-Burns (Petitioner), *pro se*, petitions for review of an order of the State Civil Service Commission (Commission) dismissing her appeal of a one-day disciplinary suspension from employment with the Erie County Office of Children and Youth (Appointing Authority). Petitioner contends that the Appointing Authority did not establish good cause and her suspension was based on discriminatory reasons. Discerning no error, we affirm.

Petitioner is employed as a County Caseworker 2 by the Appointing Authority, where she has worked for the last 24 years. By letter dated May 30, 2014, the Appointing Authority notified Petitioner that it was suspending her for one day from her position for "failure to follow through with . . . directives and procedure regarding Attendance on Demand," which "caused additional work for

other county employees." Commission Adjudication, 5/26/15, Findings of Fact (F.F.) No. 1; Certified Record (C.R.), Commission Exhibit A.

Petitioner appealed the one-day suspension to the Commission. She alleged her suspension was without adequate justification under Section 803 of the Civil Service Act (Act).[1] She claimed her suspension was the result of prohibited race and age discrimination in violation of Section 905.1 of the Act.[2]

Hearings were held before a Commission hearing officer.[3] The issues before the hearing officer were whether the Appointing Authority demonstrated good cause to impose a one-day suspension on Petitioner for not following its time and attendance procedures and whether it suspended Petitioner for discriminatory reasons. In support of the disciplinary action, the Appointing Authority presented the testimony of Petitioner's immediate supervisor, Shatoia Carroll (Supervisor), and its Administrator of Clinical Ongoing Services, Mary Jo Cline (Administrator). Petitioner testified on her own behalf.

With regard to whether the Appointing Authority demonstrated good cause for the suspension, the Commission found that in Petitioner's 2011, 2012, and 2013 annual reviews, the Appointing Authority rated her performance as "needs improvement." F.F. No. 10. In September 2013, the Appointing Authority changed Petitioner's supervisor to Supervisor because she is highly organized and the Appointing Authority believed she could help Petitioner catch up on her work. In July 2013 and November 2013, the Appointing Authority provided Petitioner

---

[1] Act of August 5, 1941, P.L. 752, *as amended*, 71 P.S. §741.803.

[2] Added by the Act of August 27, 1963, P.L. 1257, 71 P.S. §741.905a.

[3] Petitioner was represented by counsel in the proceedings before the Commission.

2

with corrective action plans to help her bring her paperwork up to date. Thereafter, the Appointing Authority reduced her caseload from 13 cases to 9. At the time, the average caseload for caseworkers was 13. F.F. Nos. 8, 10-12.

In 2014, the Appointing Authority formally warned Petitioner for not following its policies and directives. Specifically, on February 3, 2014, the Appointing Authority issued Petitioner a first level disciplinary warning for:

> Not following through with agency policy for case note documentation and poor casework practice, specifically, not returning phone calls, not responding to emails, missing scheduled home visits and meetings, and not satisfying requests for documentation on your cases. The Case Note Documentation Policy states that all contacts need to be documented in CAPS within five business days of the contact date. You failed to do this on four of your eight cases. The CAPS notes on these cases were entered 11 to 14 days after the contact dates. It is important to follow agency policies and demonstrate acceptable casework practice. Not following this policy and poor casework practice could jeopardize children's safety.

F.F. No. 13. In March 2014, the Appointing Authority issued a second level disciplinary warning for:

> Agency policy, directives from a Supervisor, and, specifically, not satisfying requests for documentation, delaying permanency for children on your case, the inability to prioritize, and ineffective communication. It is important to follow State Regulations [and] agency policies and demonstrate acceptable casework practice. Not following these regulations [and] policies and poor casework practice could jeopardize children's safety.

F.F. No. 15.

Then, in May 2014, the Appointing Authority issued third level discipline in the form of a one-day suspension because Petitioner again did not

3

follow its directives and procedures. This time, the policy pertained to time and attendance and the utilization of a new software program, known as Attendance on Demand (AOD). In 2012, the Appointing Authority implemented the AOD program to track employee time and attendance. It expected employees to use the software to punch in and punch out, request leave, and request overtime approval before working overtime. The Appointing Authority provided employees with written instructions, and it offered them training for the program. However, Petitioner did not use the AOD program to punch in or out; she did not submit her timecard for approval; she worked overtime without permission; and, she did not reconcile leave time and work time. Her noncompliance caused additional work for other employees. F.F. Nos. 1, 16-19.

With regard to Petitioner's claims that her suspension was motivated by discrimination and retaliation, the Commission found that Petitioner and Supervisor are both African-American.[4] Petitioner testified that she and Supervisor had a disagreement over court summaries. Petitioner was supposed to submit a draft court summary to Supervisor by October 31, 2013, which was due in court by November 4, 2013. She did not submit the draft until November 7, 2013. Petitioner was on leave until January 2014. Consequently, Supervisor revised her draft, made inaccurate changes, and submitted it to the court. Petitioner objected to the changes made. On February 5, 2014, Petitioner complained to Administrator and accused Supervisor of making false statements and exaggerations. She requested reassignment to a new supervisor. She received her first level discipline around that same time. F.F. Nos. 4, 6, 20-36.

---

[4] Petitioner disputes Supervisor's ethnicity claiming she is biracial, not African-American. *See* F.F. 6 n.1; Petitioner's Brief at 11; Notes of Testimony, 9/29/14, at 127.

4

Ultimately, the Commission found the testimony of Supervisor and Administrator credible. The Commission found the Appointing Authority met its burden of showing that Petitioner failed to follow its time and attendance procedures. Her failure to comply hampered and frustrated the execution of her duties and thus provided good cause for her one-day suspension. Commission Adjudication at 18, 19.

With regard to Petitioner's discrimination claims, the Commission found Claimant did not meet her burden of establishing discrimination. Claimant testified she is African-American, but she did not offer any testimony regarding her age. She did not testify regarding her time and attendance. She did not offer any evidence showing that the Appointing Authority treated her differently by suspending her for failure to comply with the time and attendance procedures from any other employee who did not comply. Commission Adjudication at 20-21.

Insofar as Petitioner asserted her suspension was in retaliation for her objections to Supervisor's changes to the court summary, the Commission determined she proved a prima facie case. Petitioner produced evidence, if believed, that Supervisor improperly changed her court summary, and Petitioner complained about it to Administrator. Petitioner testified the first level discipline was the first she received in 24 years and it was issued shortly after she complained to Administrator about Supervisor. Although Petitioner's evidence was "not overwhelming," the Commission found that it was "enough to meet her burden of establishing a prima facie case of discrimination." Commission's Adjudication at 21.

Notwithstanding, the Commission found the Appointing Authority met its burden of proving a legitimate, nondiscriminatory reason for its suspension.

5

Based on the credible testimony of the Appointing Authority's witnesses, the Commission found the Appointing Authority's decision to suspend Petitioner did not represent retaliation in response to her complaint about Supervisor regarding the court summary. The Commission explained that while Petitioner may have received her first discipline on February 3, 2014, she received a rating of "needs improvement" on her annual review for the previous three years. In 2013, the Appointing Authority assigned Supervisor to oversee Petitioner to help her with her caseload. Although Administrator acknowledged Petitioner requested a change in supervisor on February 5, 2014, Administrator credibly denied that Petitioner complained to her about Supervisor's amendment to her court summary. Moreover, the Commission found the sequence of events supported discipline related to her work, and not her objections to Supervisor's corrections. Insofar as Petitioner's testimony differed from Appointing Authority's witnesses, the Commission found the latter more credible.

Based on the credited evidence, the Commission concluded the Appointing Authority suspended Petitioner solely for the legitimate, nondiscriminatory reason that she failed to comply with its time and attendance procedures. Accordingly, the Commission dismissed Petitioner's appeal.

Petitioner now petitions this Court for review.[5] Petitioner raises two issues. First, she contends the Commission erred because the record lacks evidence supporting good cause for her suspension. Second, she asserts that

---

[5] Our review of Civil Service Commission adjudications is limited to a determination of whether constitutional rights have been violated, whether errors of law have been committed, or whether the findings of the agency are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa. C.S. §704; *Woods v. State Civil Service Commission*, 912 A.2d 803, 808 (Pa. 2006).

6

evidence supports her claim that the Appointing Authority suspended her for discriminatory reasons.

## 1. Good cause

In civil service cases, the Commission is the sole finder of fact. *Perry v. State Civil Service Commission (Department of Labor and Industry)*, 38 A.3d 942, 948 (Pa. Cmwlth. 2011). "As such, determinations as to witness credibility and resolution of evidentiary conflicts are within the Commission's sole province . . . ." *Id*. This Court will not reweigh the evidence or substitute judgment. *Id*. When reviewing a Commission decision, we view the evidence, and all reasonable inferences arising from the evidence, in a light most favorable to the prevailing party. *Id*.

We first examine Petitioner's claims that Appointing Authority lacked good cause for the suspension. Section 803 of the Act provides that a disciplinary suspension without pay of a classified employee in the civil service must be for "good cause." 71 P.S. §741.803. It is the appointing authority's burden of showing that the employee was suspended for good cause. *Hargrove v. State Civil Service Commission*, 851 A.2d 257, 260 (Pa. Cmwlth. 2004); *Shade v. State Civil Service Commission (Department of Transportation)*, 749 A.2d 1054, 1057 (Pa. Cmwlth.), *appeal denied*, 764 A.2d 52 (Pa. 2000).

Although the Act does not define the term "good cause," the attendant regulations offer guidelines as to what constitutes good cause. *Woods v. State Civil Service Commission*, 912 A.2d 803, 810 (Pa. 2006). Specifically, Section 101.21 of the Commission's regulations provides that good cause for suspension includes:

    (1)    Insubordination.
    (2)    Habitual lateness in reporting for work.

7

(3) Misconduct amounting to violation of law, rule or lawful and reasonable Departmental orders.

(4) Intoxication while on duty.

(5) Conduct either on or off duty which may bring the service of the Commonwealth into disrepute.

(6) Similar substantial reasons.

4 Pa. Code §101.21; *accord Salvati v. Department of Public Welfare*, 474 A.2d 399, 401 (Pa. Cmwlth. 1984).

In addition, this Court has held that "good cause" must relate to an "employee's competence and ability to perform his or her job duties," or "must result from conduct that hampers or frustrates the execution of the employee's duties." *Bruggeman v. State Civil Service Commission (Department of Corrections, SCI–Huntingdon)*, 769 A.2d 549, 553 (Pa. Cmwlth. 2001) (citations omitted); *Shade*, 749 A.2d at 1057. "[T]he criteria must be job related and in some rational and logical manner touch upon competence and ability." *Shade*, 749 A.2d at 1057. However, "[n]o person shall be suspended because of race, gender, religion or political, partisan or labor union affiliation." 71 P.S. §741.803.

Here, the Commission found that the Appointing Authority established its record and timekeeping policy and that Petitioner did not follow this policy on multiple occasions. It also found that Appointing Authority previously warned Petitioner about not following its directives and policies. The Commission's findings are supported by substantial evidence. Administrator testified the Appointing Authority implemented AOD in 2012, provided instructions on the program and offered training to all employees, including Petitioner. Commission Hearings, 8/12/14 and 9/29/14,[6] Notes of Testimony

---

[6] The pagination reflects the combined transcripts for both hearings.

8

(N.T.) at 16, 18. Administrator testified regarding an employee's responsibilities under AOD:

> They need to punch in and punch out daily. They need to submit requests for time off, comp time, personal leave, sick time, vacation, whatever time that may be. If they need to work overtime, they need to let their supervisor know to get a prior approval for that.

*Id.* at 18-19.

Supervisor testified Petitioner was aware of the AOD program and she did not exhibit any difficulties using the program after implementation. N.T. at 73. However, in 2013, issues arose. *Id.* Supervisor described the following problems:

> I was having issues with her requesting time off, letting me know how she wanted overtime, either comp or paid overtime. I was having issues with her working overtime without permission. I was having issues with her punching in and punching out. I was having issues with her submitting AOD timecard or approving it in a timely manner. I was also having issues with her requesting days off and vacation days.

*Id.* at 74-75. She explained that Petitioner:

> would request a day off, and come into work and work, and not punch out so they [sic] would look like a vacation day, where she's actually in the office. And then she wouldn't reconcile her AOD with me, so I had no way to really show, you know, were you at work or were you not at work.

*Id.* at 75. Supervisor testified these issues caused additional work for her. *Id.*

The Appointing Authority suspended Petitioner for one day without pay as part of its progressive discipline policy. Administrator testified that, prior to this suspension, the Appointing Authority had other issues with Petitioner. N.T. at 24. In February 2014 and March 2014, Appointing Authority issued first and

9

second level disciplinary warnings for not following agency policies and directives. C.R., Appointing Authority Exhibit 3. Prior to that, in 2013, the Appointing Authority issued two corrective action plans because Petitioner fell behind on her paperwork. N.T. at 23, 53-54. In the 2011, 2012, and 2013 annual reviews, Appointing Authority rated Petitioner's performance as "needs improvement." N.T. at 25; *see id*. at 58. Although the merit of the prior discipline was not subject to review at the hearing, it showed the Appointing Authority followed the standard, progressive procedure by issuing a one-day suspension for the third violation.

Petitioner did not deny or otherwise defend her noncompliance with the record and timekeeping policy on the AOD system. Petitioner's failure to follow the record and time policy clearly related to her ability and competence to perform her job duties. Upon review, the Appointing Authority met its burden of proving good cause for suspending Petitioner.

## 2. Discrimination

Next we turn to Petitioner's claim of discrimination. Section 905.1 of the Act provides, in relevant part, that "[n]o officer or employe of the Commonwealth shall discriminate against any person in ... retention or any other personnel action with respect to classified service because of ... race ... or other non-merit factors." 71 P.S. §741.905a. An employee asserting discrimination under the Act must present some affirmative evidence in support of that allegation, and the Commission may not infer discrimination. *Bruggeman,* 769 A.2d at 553. When claiming disparate treatment, the employee must demonstrate that she was treated differently than other employees similarly situated. *Id.* If the employee

10

meets this burden, "the employer must demonstrate a non-discriminatory reason for its conduct." *State Correctional Institution at Pittsburgh v. Weaver*, 606 A.2d 547, 549 (Pa. Cmwlth. 1992).

Here, with respect to age discrimination, Petitioner did not offer any evidence regarding her age. As for her claims of racial discrimination, Petitioner is African-American, but so too is the Supervisor who issued the suspension. Significantly, Petitioner offered no evidence that Appointing Authority treated her differently than any other employee who did not comply with the AOD procedures. Although the Commission found Petitioner met a *prima facie* case based on the fact that her suspension occurred close in time to her disagreement with Supervisor over the court summary, as discussed above, the Commission found the Appointing Authority demonstrated nondiscriminatory, good cause reason for the suspension. Reviewing the record in light of the Commission's credibility determinations, we conclude that the Commission did not err in concluding the suspension was for the legitimate, nondiscriminatory reason that Petitioner violated its directives and procedures regarding AOD.

Accordingly, we affirm.

_____
MICHAEL H. WOJCIK, Judge

11

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Sandra L. Tate-Burns, :
: No. 1304 C.D. 2015
          Petitioner :
:
        v. :
:
State Civil Service Commission :
(Erie County Office of Children :
and Youth), :
:
        Respondent :

## O R D E R

AND NOW, this 10th day of November, 2016, the order of the State Civil Service Commission, dated May 26, 2015, is AFFIRMED.

_____
MICHAEL H. WOJCIK, Judge