Paul E. Kanjorski, Petitioner *v.* Commonwealth of Pennsylvania, Department of Labor and Industry, Respondent.

Argued March 8, 1979, before Judges WILKINSON, JR., MENCER and DISALLE, sitting as a panel of three.

*Joseph J. Musto,* with him *Griffith, Aponick & Musto,* for appellant.

*Sandra S. Christianson,* Assistant Attorney General, for appellee.

OPINION BY JUDGE MENCER, July 9, 1979:

This is an appeal by Paul E. Kanjorski (petitioner) from a decision of the State Civil Service Commission (Commission) sustaining his 10-day suspension as a workmen's compensation referee (referee), regular status, imposed by the Deputy Secretary of Labor and Industry (Secretary). We reverse.

Petitioner is both a referee and an attorney in private practice. On March 9, 1977, subsequent to a negotiated settlement of a civil case in which petitioner represented a plaintiff, petitioner told the opposing counsel, Bart E. Ecker, Jr., that because of the manner in which Ecker had conducted the negotiations he did not know whether he would be able to handle or rule impartially upon any cases of Ecker or Reliance Insurance Company, whom Ecker represented. He added that he might seek reassignment of

such cases. Ecker later questioned whether his workmen's compensation cases would be treated fairly by petitioner and inquired whether petitioner was sincere about his statement. Upon receiving Ecker's inquiry, petitioner brought the matter to the attention of the Department of Labor and Industry (Department), the appointing authority. He maintained that he would be impartial but suggested that the cases involving Ecker be reassigned to avoid any appearance of bias. An investigation ensued.

Petitioner was suspended 10 working days between June 8 and June 22, 1977 by the Secretary on a charge of misuse of, and misconduct in, his official position as referee, based on an alleged threat to use his office to "even the score" against Ecker. Petitioner appealed to the Commission. After a hearing, the Commission found as a fact that petitioner told Ecker that "he would never be able to handle, or rule upon, any (Workmen's Compensation) case you (Ecker) or Reliance Insurance Company have before me." Based on this finding, the Commission, by a 2-to-1 vote, dismissed the appeal and sustained the suspension. This appeal followed.

The issue before us is whether the Commission erred in concluding that petitioner's conduct constituted "good cause" for suspension under Section 803 of the Civil Service Act, Act of August 5, 1941, P.L. 752, *as amended,* 71 P.S. §741.803, which provides, in pertinent part:

> An appointing authority may for *good cause* suspend without pay for disciplinary purposes an employe holding a position in the classified service. Such suspension shall not exceed in the aggregate thirty working days in one calendar year . . . . What shall constitute good cause for suspension may be stated in the rules. (Emphasis added.)

Section 101.21(a) of the Civil Service Regulations, 4 Pa. Code §101.21(a), provides:

(a) Good cause for suspension shall be a just cause, such as:

(1) insubordination;

(2) habitual lateness in reporting for work;

(3) misconduct amounting to violation of law, rules or lawful and reasonable departmental orders;

(4) intoxication while on duty;

(5) scandalous or disgraceful conduct while on or off duty which may bring the service of the Commonwealth into disrepute; or

(6) similar substantial reasons.

It is well established that one's relationship with the classified service turns upon a merit concept. *Warwood v. Lancaster County Board of Assistance,* 32 Pa. Commonwealth Ct. 468, 473, 379 A.2d 1354, 1356 (1977).

This means that any 'personnel action' carried out by the Commonwealth is to be scrutinized in the light of such merit criteria, as has the party failed to properly execute his duties, or has he done an act which hampers or frustrates the execution of same. The criteria must be job-related and in some rational and logical manner touch upon competency and ability.

*Corder v. Civil Service Commission,* 2 Pa. Commonwealth Ct. 462, 467, 279 A.2d 368, 371 (1971).

There is absolutely no evidence that petitioner threatened to use his office to even the score against Ecker, which alleged threat was the basis of the Secretary's letter of suspension. Further, there is no evidence of actual biased or unfair conduct by petitioner. Rather, as the Commission found, the only ''misconduct'' is petitioner's statement to the effect

that he might be unable to hear cases involving Ecker or Reliance Insurance Company because of his personal feelings resulting from the settlement proceedings.

Although this incident may have raised some question about petitioner's ability to be an impartial referee and has resulted in reassignment of some cases, the action suggested by petitioner's remarks and actually taken is precisely the action expected and required of persons exercising quasi-judicial powers who have reason to doubt that they can act in a completely impartial manner. *See Code of Judicial Conduct,* Canon 3C(1); *Code of Professional Responsibility,* DR 5-101(a). The questions regarding a referee's impartiality and the transfer of cases are concomitant results anytime a referee disqualifies himself from a case. While the Department argues that the execution of petitioner's duties was hampered as a result of the incident, there was no evidence that petitioner would have been unable to hear other cases that might be substituted for those transferred.

Petitioner himself raised the issue before the concerned party and before the appointing authority. No one had entered a complaint. It is unreasonable to penalize him for his candor and honesty in raising the issue. By imposing sanctions in this case, we would only promote silence among referees facing similar situations.

Finally, petitioner's conduct does not constitute a "substantial reason" for suspension which is "similar" to the others listed in the Civil Service Regulations at 4 Pa. Code §101.21(a).

Therefore, we enter the following

ORDER

AND Now, this 9th day of July, 1979, the order of the State Civil Service Commission, dated March 16,

1978, dismissing the appeal of Paul E. Kanjorski from his suspension as workmen's compensation referee, regular status, and sustaining the suspension of Paul E. Kanjorski from his position as workmen's compensation referee, regular status, effective 8:30 a.m., June 8, 1977, until 8:30 a.m., June 22, 1977, imposed by the Deputy Secretary of Labor and Industry, is reversed. Paul E. Kanjorski is hereby reinstated as a workmen's compensation referee, regular status, for the period between 8:30 a.m., June 8, 1977, through 8:30 a.m., June 22, 1977, and shall be paid compensation for said period.

———

DISSENTING OPINION BY JUDGE WILKINSON, JR.:

The issue of fact before the Commission was not merely the words used by petitioner in his outburst after his unsuccessful pre-trial negotiations with Ecker. The issue is the meaning the words and actions were intended to convey based on all the circumstances. It is the petitioner's position, expressly found incredible by a majority of the Commission but accepted by the majority of this Court, that he was merely being commendably candid and honest in pointing out to Ecker and his client that he might request cases involving Ecker or his client be transferred from his jurisdiction as referee because he might be biased. It was the Commission's finding, in my opinion supported by all the words and surrounding circumstances, that petitioner "lost his cool" and was threatening to "even the score" by this misuse of his official position as referee.

The majority points out that it was the petitioner who reported the incident out to his superiors and that no one had entered a complaint. However, as it appears in the opinion, this was triggered by Ecker who first followed up with petitioner to be certain his cases would be transferred.

In my view this record supports the Commission's conclusion that petitioner's language and actions were intended to and did convey to Ecker and his client that petitioner might misuse his authority as referee in matters involving them. It is quite correct that referees must be encouraged to disclose any bias they might have. However, it is equally important that referees must be discouraged from misusing their offices as a threat in negotiations with other lawyers on unrelated matters.

I would affirm the decision of the Commission and therefore must respectfully dissent.