506 A.2d 504

Paul R. Toland, Petitioner *v.* State Correctional Institution at Graterford, Bureau of Correction, Respondent.

Submitted on briefs December 10, 1985, to Judges ROGERS and MACPHAIL, and Senior Judge BARBIERI, sitting as a panel of three.

*Luke F. McLaughlin, III, Reynolds, McLaughlin, Josel & Reynolds,* for petitioner.

*David B. Farney,* Assistant Counsel, for respondent.

OPINION BY JUDGE MACPHAIL, March 18, 1986:

Paul R. Toland (Petitioner) appeals here an order of the State Civil Service Commission (Commission) which dismissed his appeal of a five-day suspension by the Bureau of Correction (Bureau) from his position as Correction Officer I at the State Correctional Institution at Graterford.[1] We affirm the Commission's order.

---

[1] We note in reviewing the record that the Commission's adjudication order is dated January 24, 1984 and that Petitioner's petition for review was mailed to this Court on February 27, 1984, as evidenced by the date on a United States Postal Service Form 3817. A petition for review must be filed with the prothonotary of this Court "within 30 days after the entry of the order." Pa. R.A.P.

The Commission made the following pertinent findings of fact:

> 1. By letter dated August 9, 1983, [Petitioner] ... was suspended for five days from his position as Corrections Officer I, regular status, effective August 18, 1983, on a charge of refusing to obey a direct order.
>
> ....
>
> 3. In order for the appointing authority [(Bureau)] to gain accreditation, it must train all its personnel in the implementation of a written emergency plan.
>
> 4. To comply with this requirement, the appointing authority conducted training sessions for the purpose of familiarizing staff with the general information contained in the appointing authority's emergency plan.

---

1512(a)(1). The Bureau has not raised the issue of the timeliness of the petition. This Court will raise the issue of the timeliness of an appeal on its own motion, because the issue goes to the subject matter jurisdiction of the Court. *Baker v. Pennsylvania Human Relations Commission*, 75 Pa. Commonwealth Ct. 296, 462 A.2d 881 (1983), *modified*, 507 Pa. 325, 489 A.2d 1354 (1985).

In the case *sub judice*, February 27, 1984 must be deemed to be the date Petitioner filed his petition for review. *See* Pa. R.A.P. 1514(a). The date upon which the thirty day appeal period began to run was the date the Commission *mailed* its order. *See Sheets v. Department of Public Welfare*, 84 Pa. Commonwealth Ct. 388, 479 A.2d 80 (1984); *Ozolins v. Department of Education*, 30 Pa. Commonwealth Ct. 70, 372 A.2d 1230 (1977); Pa. R.A.P. 108(a)(1). There is nothing in the record which indicates on what date the Commission mailed the adjudication to Petitioner. The date on the order is not identified as the mailing date, so we must assume that it is the execution date. *See Sheets*. Because the record does not establish the starting date for the running of the thirty day appeal period, we will not dismiss the petition as being untimely filed. *See id*.

5. The supervisors of the training sessions were required to furnish proof that the appointing authority's employes had attended the sessions.

6. At the beginning of a half-hour training session, which [Petitioner] ... attended on July 29, 1983, [Petitioner's] ... training supervisor asked all trainees to sign an attendance roster.

7. [Petitioner] ... refused to sign the roster, believing his signature would constitute evidence that he thoroughl [sic] understood the entire emergency plan, which encompassed approximately 140 pages.

8. The training supervisor specifically informed [Petitioner] ... that the signature was needed only to verify appellant's attendance at the session. He then ordered [Petitioner] ... to sign the roster; [Petitioner] ... refused to sign.

9. Appointing authority policy provides that lawful orders are to be promptly obeyed, even if the employe questions the wisdom of the order; the employe may then appeal the order at a later date.

*Toland v. State Correctional Institution at Graterford,* (Appeal No. 4712, State Civil Service Commission, Jan. 24, 1984), adjudication at 1-2.

Our scope of review in a civil service suspension case is limited to determining whether necessary findings of fact are supported by substantial evidence, and whether the adjudication of the Commission is in violation of constitutional rights or is not in accordance with the law. *Salvati v. Department of Public Welfare,* 81 Pa. Commonwealth Ct. 629, 474 A.2d 399 (1984); Section 704 of the Administrative Agency Law, 2 Pa. C. S. §704.

We find that the Commission's findings of fact are supported by substantial evidence. It is true that there was conflicting testimony concerning finding of fact number eight. The training supervisor testified that he told Petitioner that those signing the roster were not indicating that they understood the entire emergency plan, only that they were in attendance at the training session.[2] Petitioner testified that he asked the training supervisor why the trainees had to sign the roster, that the training supervisor never explained to him adequately the reason, and that the training supervisor then ordered Petitioner to sign the roster.[3] It is axiomatic that the Civil Service Commission, not this Court, has the power to resolve questions of credibility and to weigh the evidence. *Allegheny County Children and Youth Services v. Williams*, 87 Pa. Commonwealth Ct. 77, 487 A.2d 47 (1985). The fact that the Commission gave greater credence to the testimony of the training supervisor than to that of the Petitioner is not an abuse of its fact-finding function. *See Doerr v. Pennsylvania Liquor Control Board*, 88 Pa. Commonwealth Ct. 610, 491 A.2d 299 (1985).

The Bureau had the burden of showing that Petitioner was suspended for "good cause." *Pennsylvania Liquor Control Board v. Smith*, 86 Pa. Commonwealth Ct. 128, 484 A.2d 201 (1984); Section 803 of the Civil Service Act (Act).[4] "Good cause" is not defined in the Act itself, but the Rules of the Civil Service Commission, 4 Pa. Code §§91.1-105.17 provide in pertinent part as follows:

---

[2] Notes of testimony of October 31, 1983 and November 1, 1983 (N.T.) at 46, 49-50.

[3] N.T. at 60-61.

[4] Act of August 5, 1941, P.L. 752, *as amended*, 71 P.S. §741.803.

(a) Good cause for suspension shall be one of the following:

(1) Insubordination....

(3) Misconduct amounting to violation of law, rule, or lawful and reasonable Departmental orders.

4 Pa. Code §101.21(a).

This Court in *McCain v. Department of Education,* 71 Pa. Commonwealth Ct. 165, 454 A.2d 667 (1983) held that:

The Civil Service Act requires with respect to disciplinary suspensions only that they be for 'good cause,' a requirement we have described as follows:

This means that any 'personnel action' carried out by the Commonwealth is to be scrutinized in the light of such merit criteria, as has the party failed to properly execute his duties, or has he done an act which hampers or frustrates the execution of same. The criteria must be job-related and in some rational and logical manner touch upon competence and ability.

Cordor v. Civil Service Commission, 2 Pa. Commonwealth Ct. 462, 467, 279 A.2d 368, 371 (1971).... *[T]he concept of insubordination denotes either disobedience or defiance or contempt of authority and is quite literally an unwillingness to submit oneself to the authority of organizational superiors.*

*Id.* at 169-70, 454 A.2d at 669 (emphasis added).

In the instant case, under the *McCain* criteria, Petitioner was clearly insubordinate. He disobeyed his superior by refusing to sign the roster.

Petitioner's actions also fall under Subsection (a) (3) of 4 Pa. Code §101.21 in that his superior specifically ordered him to sign the roster. In addition, Petitioner's

actions violated a rule of the Bureau. Rule B-9 of the Bureau of Correction Code of Ethics Handbook, which was properly admitted into evidence at Petitioner's hearing,[5] reads:

9. Lawful orders by a supervisor to a subordinate must be executed promptly and faithfully by the subordinate even though the employee may question the wisdom of such order. The privilege of formally appealing the order may be done at a later date through either the supervisory command structure, civil service appeal, or grievance machinery.

Under this rule, if Petitioner felt that the order to sign the roster was improper, he should have nevertheless signed it and appealed the order at a later date.

Petitioner attempts to justify his conduct by resorting to another rule from the Code of Ethics Handbook, Rule B-20.[6]:

20. An employee shall submit any necessary and/or requested reports in a timely manner and in accordance with existing regulations. Reports submitted by employees shall be truthful and no employee shall knowingly enter or cause to be entered any inaccurate, false or improper information or date, or misrepresent the facts in any Bureau record or report.

Petitioner asserts that if he had signed the roster, he would have violated this rule. This assertion is based on Petitioner's averment that he believed that by signing the roster he was indicating that he thoroughly understood the entire emergency plan. The Commission's finding of fact number eight states that Petitioner's

---

[5] N.T. at 13.

[6] This rule was also properly admitted into evidence. N.T. at 79.

training supervisor told· him that his signature was needed only to verify Petitioner's attendance at the session. As we have already stated, we will not disturb this finding of fact. Because we accept that Petitioner was told his signature indicated only his attendance, Petitioner could not justifiably believe that by signing the roster he was violating Rule B-20.

We conclude that the Bureau met its burden of showing that it had "good cause" to suspend Petitioner. The Commission's dismissal of Petitioner's appeal must be affirmed.

### ORDER

The order of the State Civil Service Commission, in appeal No. 4712, dated January 24, 1984, is hereby affirmed.