**Kent M. SHADE, Petitioner,**

v.

**PENNSYLVANIA STATE CIVIL SERVICE COMMISSION (PENNSYLVANIA DEPARTMENT OF TRANSPORTATION), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Jan. 28, 2000.

Decided April 14, 2000.

Stephen D. Wicks, Altoona, for petitioner.

Chester J. Karas, Jr., Pittsburgh, for respondent.

Before PELLEGRINI, J., FLAHERTY, J., and McCLOSKEY, Senior Judge.

FLAHERTY, Judge.

Kent M. Shade (Petitioner) petitions for review from an order of the State Civil Service Commission (Commission) which dismissed Petitioner's appeal challenging a five-day suspension from his position as a regular Field Personnel Officer 3 by the Pennsylvania Department of Transportation (Department). We affirm.

Petitioner is employed by the Department as a Field Personnel Officer 3. In this position, Petitioner is responsible for all personnel functions including labor relations, safety, training, employee benefits, records and transactions, classification, payroll, recruitment, placement, certification, management development, and job related performance evaluations. By letter dated September 4, 1998, Petitioner was notified that he was receiving alternative discipline in lieu of suspension for unsatisfactory work performance.[1] The Department informed Petitioner that this discipline would have no impact on his position as a Field Personnel Officer 3 in terms of compensation or other benefits, but would have the same weight as a five-day suspension. Petitioner appealed this disciplinary action to the Commission pursuant to Section 951(a) of the State Civil Service Act (Act).[2]

The Commission held hearings concerning Petitioner's appeal on January 25, 1999 and April 22, 1999, at which Petitioner and Department witnesses presented testimony and evidence. Petitioner's immediate supervisor testified that he had prepared a work plan for Petitioner that contained fifteen performance standards. This work plan was presented to Petitioner on approximately September 1, 1997. The supervisor also testified that as part of the rating process quarterly review sessions were conducted with Petitioner. The first review session with Petitioner was held in October 1997, during which the supervisor reviewed Petitioner's job performance for July, August and September 1997. During this session the supervisor discussed the following with Petitioner: that payrolls were behind, the slowness in filling positions and the lack of a tracking process to keep track of where the Department was at in filling positions; that the mail processing was slow, very, very slow and nonexistent on some days; that team building was a very big part of it and that it was necessary to build a strong team in his organization to more efficiently carry out the work and to get the work performed.

Petitioner's supervisor held the next quarterly review session with Petitioner on January 9, 1998, during which Petitioner's job performance for October, November and December 1997 was discussed. The supervisor rated Petitioner as unsatisfactory in the following eight performance standards: (1) processing of incoming and outgoing mail; (2) filling of positions; (3) developing a strong team in the Administrative staff; (4) developing an agile Per-

---

1. Petitioner was suspended pursuant to Section 803 of the Civil Service Act (Act), Act of August 5, 1941, P.L. 752, *as amended*, 71 P.S. § 741.803.

2. 71 P.S. § 741.951(a).

sonnel Unit; (5) Customer Service Index; (6) advancing CQI [3] and customer service effort; (7) right to know audits, contracting out tracking and accident reporting; and (8) completing employee performance reviews. As a result of Petitioner's unsatisfactory performance in these eight areas, his supervisor increased the frequency of Petitioner's reviews to bi-monthly instead of quarterly.

The supervisor held the first bi-monthly review with Petitioner on March 2, 1998. Petitioner was rated unsatisfactory in seven of the eight work standards he had previously been rated as unsatisfactory. The only area in which the supervisor found improvement was in the Customer Service Index area.

The second bi-monthly review was held with Petitioner on June 1, 1998. Petitioner was rated unsatisfactory in four areas: (1) filling vacant positions; (2) developing a team in the Personnel Unit; (3) completing desk manuals; and (4) completing employee performance reviews in a timely manner.

On August 13, 1999, Petitioner received his annual employee performance review for the rating period from July 1997 to June 1998. Petitioner received an overall rating of unsatisfactory. He was rated as needs improvement in the job knowledge/skills and the supervision/management categories and unsatisfactory in the work results, communications, initiative/problem solving, interpersonal relationships/affirmative action and work habits categories. It was after this final evaluation that Petitioner was disciplined.

Petitioner appealed this decision to discipline him to the Commission. The Commission dismissed Petitioner's appeal and sustained the action of the Department. Petitioner then petitioned this Court for review of the Commission's order.

■ Petitioner raises two issues for our review: whether the Commission's findings of fact are supported by substantial evidence and whether the Commission erred as a matter of law by concluding that the Department had good cause for suspending him.[4]

■ First, Petitioner argues generally that the Commission's findings of fact are not supported by substantial evidence. Petitioner does not direct this Court to any specific finding that he believes is not supported by substantial evidence. After a review of the record and the Commission's findings, we conclude that the findings are supported by substantial evidence in the record.[5]

■ It is axiomatic that the Commission, not this Court, has the power to resolve questions of credibility and to weigh the evidence. *Toland v. State Correctional Institution at Graterford, Bureau of Correction*, 506 A.2d at 506. It is clear from the Commission's decision that it found credible the testimony from the witnesses of the Department, not Petitioner's testimony, where there was a conflict. A close reading of Petitioner's substantial evidence argument reveals that Petitioner relies on his own version of the facts as opposed to the findings as made by the Commission based upon its credibility determination. The fact that the Commission gave greater weight to the testimony of Petitioner's supervisor than to the testimony of Petitioner is not an error or abuse of the Commission's fact-finding function.

---

**3.** "CQI" stands for continuous quality improvement.

**4.** Our review in a civil service suspension case is limited to determining whether necessary findings of fact are supported by substantial evidence and whether the Commission's decision is violative of constitutional rights or is contrary to the law. *Toland v. State Correctional Institution at Graterford, Bureau of Correction*, 95 Pa.Cmwlth. 634, 506 A.2d 504 (1986).

**5.** Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Peak v. Unemployment Compensation Board of Review*, 509 Pa. 267, 501 A.2d 1383 (1985).

We conclude that the Commission's facts, and conclusions therefrom, are based upon substantial evidence. Accordingly, Petitioner's substantial evidence argument must fail.

■ Petitioner also contends that the Commission erred as a matter of law in concluding that the Department had good cause to suspend him. The only requirement of the Act with respect to disciplinary suspensions of civil service employees is that they be for good cause. *Mayview State Hospital, Department of Public Welfare v. Martin,* 101 Pa.Cmwlth. 615, 516 A.2d 1302 (1986). The Department has the burden of showing that Petitioner was suspended for good cause. *Toland,* 506 A.2d at 506. Good cause is not defined in the Act itself, but a rule of the Commission at 4 Pa.Code § 101.21 provides a guide for what would constitute good cause for a suspension.[6] In addition, the case law has interpreted good cause to mean that any personnel action carried out by the state must be scrutinized in the light of merit criteria, such as has the party failed to properly execute his duties, or has he done an act which hampers or frustrates the execution of same. In addition, the criteria must be job related and in some rational and logical manner touch upon competence and ability. *Toland,* 506 A.2d at 506, citing *McCain v. Department of Education,* 71 Pa.Cmwlth. 165, 454 A.2d 667 (1983).

First, Petitioner argues that the rating of unsatisfactory in two categories, interpersonal relations/affirmative action and work habits, relate to events that are the subject of an earlier disciplinary action. Petitioner contends that suspending him for these ratings is an attempt to punish him twice for the same allegations. A review of the testimony reveals that the unsatisfactory rating in these two categories was not solely based upon the incidents referred to by Petitioner that resulted in other discipline. There is substantial evidence to conclude that Petitioner had other performance shortfalls that were considered by the supervisor in reaching these unsatisfactory ratings. Moreover, Petitioner only attacks two of the five categories in which he received unsatisfactory ratings, leaving three other categories with unsatisfactory ratings. With either three or five categories rated as unsatisfactory, it is clear that Petitioner's ability to do his job and his competence level at his job were lacking.

Petitioner also contends that the Commission erred when it failed to enforce the requirement in the Management Directive that the Department rate the employee by assessing each of the seven job factors in relation to the established standards. We note that Petitioner does not fully develop this argument, instead he only makes the assertion. However, our review of the established standards referred to by Petitioner do not reveal any error on the Commission's part.

■ As stated above, in order for the Department to have good cause to discipline Petitioner, the reasons for the discipline must be related to his job in some rational and logical way and touch upon his competence and ability to do his job. It is evident from the testimony and evidence that the Department had good cause to discipline Petitioner. Clearly his failure to follow through with his job responsibilities and his failure to meet the performance standards in his work plan, even after he had been advised repeatedly in perfor-

---

6. 4 Pa.Code § 101.21 Generally—

(a) Good cause for suspension is one of the following:
    (1) Insubordination.
    (2) Habitual lateness in reporting for work.
    (3) Misconduct amounting to violation of law, rule or lawful and reasonable Departmental orders.
    (4) Intoxication while on duty.
    (5) Conduct either on or off duty which may bring the service of the Commonwealth into disrepute.
    (6) Similar substantial reasons.

mance reviews that his performance was unsatisfactory,[7] constitutes the good cause contemplated by the Commission's rules and the case law. Therefore, we conclude that the Commission did not err as matter of law in concluding that the Department had good cause for suspending Petitioner and the Commission's order dismissing Petitioner's appeal is affirmed.

### *O R D E R*

AND NOW, this 14th day of April, 2000, the State Civil Service Commission's dismissal of Petitioner's appeal at Appeal No. 20899 dated September 21, 1999, is affirmed.

---

7. *See Flannery v. Pennsylvania Liquor Control Board,* 38 Pa.Cmwlth. 296, 392 A.2d 914 (1978) where this Court found good cause to suspend the petitioner for three days due to his failure to maintain and supervise store sales and operating procedures and for unsatisfactory supervisor's reports after repeatedly being advised that his performance was unsatisfactory.