IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Frank M. Burock,                              :
                    Petitioner                :
                                              :
          v.                                  :
                                              :
State Civil Service Commission                :
(Office of the Budget),                       :    No. 81 C.D. 2020
                    Respondent                :    Submitted: November 6, 2020


BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
           HONORABLE P. KEVIN BROBSON, Judge[1]
           HONORABLE CHRISTINE FIZZANO CANNON, Judge


OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE FIZZANO CANNON              FILED: May 13, 2021


          Frank M. Burock (Burock), *pro se*, petitions for review of the
December 12, 2019 order of the State Civil Service Commission (Commission)
sustaining the decision of the Office of the Budget (Employer) to impose a level one
alternative discipline in lieu of suspension (ADLS-1) from regular Accountant 3
employment with Employer's Executive Offices, and dismissing Burock's appeal
therefrom. Upon review, we affirm.

_____

[1] This case was assigned to the opinion writer before January 4, 2021, when Judge Brobson
became President Judge.

# I. Background

Burock began working for Employer in 2012.  Comm'n Adj., 12/12/19 at 2, Finding of Fact (F.F.) 4, Supplemental Reproduced Record (S.R.R.) at 251b.[2] In 2016, Burock signed a description of the duties entailed by the Accountant 3 position.  F.F. 5, S.R.R. at 252b.

Michelle Baker (Baker), a general accounting manager with Employer's Bureau of Accounting and Financial Management, has functioned as Burock's immediate supervisor since 2018.  F.F. 4, S.R.R. at 251b-52b.  By signature dated July 25, 2018, Burock acknowledged receipt of a Performance Improvement Plan (PIP) from Baker covering the period of July 25, 2018 to October 12, 2018 (PIP period).  F.F. 16, S.R.R. at 257b.  Burock participated in weekly meetings with Baker; Andy Cameron (Cameron), the assistant director in Employer's General Accounting Division and Burock's second-level supervisor; and Jamie Jerosky (Jerosky), the integrated financial services manager for the Bureau of Accounting and Financial Management and Burock's former direct supervisor, who continued to assist Baker with her supervision of Burock.  *See* Transcript of Testimony (T.T.) at 1, 19, 89 & 100, S.R.R. at 2b, 20b, 90b & 101b; F.F. 4 & 16, S.R.R. at 251b & 257b-58b.  In December 2018, Burock received a copy of an interim employee performance review (EPR) evaluating his job performance during the PIP period, signed by Baker as the rater and Cameron as the reviewing officer.  Comm'n Adj., 12/12/19 at 9, F.F. 17, S.R.R. at 258b.  In the

---

[2] We note that we have added the letter "b" following the page numbers in our citations to the supplemental reproduced record (S.R.R.), although Employer failed to do so in accordance with Pennsylvania Rule of Appellate Procedure 2173.  *See* Pa.R.A.P. 2173 (providing that pages of the S.R.R. shall be numbered separately in Arabic figures followed by a small letter "b").

December 2018 EPR, Burock received a rating of "Unsatisfactory" in the individual categories of "Job Knowledge/Skills," "Communications" and "Initiative/Problem Solving"; a rating of "Needs Improvement" in the category of "Work Habits"; a rating of Satisfactory in the categories of "Work Results" and "Interpersonal Relations/[Equal Employment Opportunity]"; and an overall rating of "Unsatisfactory." F.F. 18, S.R.R. at 258b.

In January 2019, Burock attended a pre-disciplinary conference regarding his December 2018 EPR. F.F. 19, S.R.R. at 259b. The following week, Burock received notification of the imposition of an ADLS-1 due to unsatisfactory work performance during an interim employee performance review period also spanning July 25, 2018 to October 12, 2018 (rating period). F.F. 1-2 & 19, S.R.R. at 251b & 259b. Burock appealed pursuant to Section 951(a) of the Civil Service Act of 1941 (Civil Service Act),[3] 71 P.S. § 741.951(a).[4] *See* F.F. 3, S.R.R. at 251b.

---

[3] *Former* Act of August 5, 1941, P.L. 752, No. 286, *as amended*, 71 P.S. §§ 741.1-741.1005. Effective March 28, 2019, the Act of June 28, 2018, P.L. 460, No. 71 (Act 71) repealed and replaced the Civil Service Act. "The purpose of [Act 71] is to create and sustain a modern merit system of employment within the Commonwealth workforce that promotes the hiring, retention and promotion of highly qualified individuals, ensuring that government services are efficiently and effectively delivered to the public." Section 2102 of Act 71, 71 Pa.C.S. § 2102. Further, "the amendments in Act 71 . . . are not intended to change or affect the legislative intent, judicial construction or administration and implementation of the Civil Service Act." 49 Pa. B. 1297 (2019) (Civil Service Reform), available at http://www.pacodeandbulletin.gov/Display/pabull?file=/secure/pabulletin/data/vol49/49-11/414.html#:~:text=Effective%20March%2028%2C%202019%2C%20the,of%20August%205%2C%201941%20(P.L.&text=The%20adoption%20of%20temporary%20regulations,769%2C%20No (last visited May 12, 2021).

[4] Section 951(a) of the former Civil Service Act provided that any regular employee in the classified service could appeal a suspension for cause within 20 days of the receipt of notice thereof from the appointing authority, and required the Commission to promptly schedule and hold a public hearing upon receipt of the employee's notice of appeal. *See* Section 951(a) of the *former* Civil Service Act, added by the Act of August 27, 1963, P.L. 1257, 71 P.S. § 741.951(a).

In April 2019, the Commission conducted a hearing in which both Burock and Employer participated. T.T., 4/3/19 at 1-2, S.R.R. at 2b-3b. Employer offered the testimony of Baker, Cameron and Jerosky. *See* T.T. at 1, 19, 89 & 100, S.R.R. at 2b, 20b, 90b & 101b; F.F. 4, S.R.R. at 251b. Baker testified that Burock's duties include reviewing and posting park entries on a daily basis; communicating with and resolving questions posed by agencies; and completing quarterly financial statements, monthly reporting and monthly counter estimations. Comm'n Adj., 12/12/19 at 11, S.R.R. at 260b (citing T.T., 4/3/19 at 21, S.R.R. at 22b). Baker stated that she reviews her subordinates' work product for accuracy and clarity. Comm'n Adj., 12/12/19 at 11-12, S.R.R. at 260b-61b (citing T.T., 4/3/19 at 23, S.R.R. at 24b). Baker noted that the Department of Revenue and the Office of the Budget are two of the largest agencies assigned to Burock. Comm'n Adj., 12/12/19 at 11, S.R.R. at 260b (citing T.T., 4/3/19 at 21, S.R.R. at 22b). Baker attested that Burock demonstrated neither the critical thinking skills an Accountant 3 is expected to possess, nor an "in-depth understanding" of his duties as described in the relevant job performance standards. Comm'n Adj., 12/12/19 at 11-12, S.R.R. at 260b-61b (citing T.T., 4/3/19 at 27 & 29, S.R.R. at 28b & 30b). Baker explained that she issued a PIP for the PIP period due to Burock's failure to exhibit improvement and to provide notice of his unsatisfactory job performance in certain areas. Comm'n Adj., 12/12/19 at 12, S.R.R. at 261b (citing T.T., 4/3/19 at 45-46, S.R.R. at 46b-47b). Baker testified that the PIP was based on applicable employee performance standards and contained "normal expectations for an Accountant 3[.]" *Id.* Regarding Burock's interim EPR rating at the conclusion of this PIP period, Baker attested that Burock exhibited improvement only in the "Work Results" category, as the timeliness of his work had improved and he had also recommended a streamlined

4

process for a financial reporting requirement. Comm'n Adj., 12/12/19 at 13, S.R.R. at 262b (citing T.T., 4/3/19 at 48-49, S.R.R. at 50b-51b). Baker cited documents evidencing specific examples of Burock's failure to meet standards delineated in various EPR rating categories:

> 1. [W]ork [H]abits -- a series of emails indicating that [Burock] had failed to update a distribution list for a financial statement ([T.T., 4/3/19 at 51, S.R.R. at 52b]; [Appointing Authority] Ex. 9A);
>
> 2. [J]ob-[K]nowledge/[S]kills -- a series of emails initiated by a question from an agency which [Burock] forwarded to [Baker] without performing any research to correctly identify the problem ([T.T., 4/3/19 at 51-52, S.R.R. at 52b-53b]; [Appointing Authority] Ex. 9B);
>
> 3. [I]nitiative/[P]roblem-[S]olving -- emails addressing a matter [Burock] was not able to resolve independently. [Burock] used another Accountant 3 and an Accountant 1 to resolve the issue for him ([T.T., 4/3/19 at 52-53, S.R.R. at 53b-54b]; [Appointing Authority] Ex. 9C);
>
> 4. [I]nitiative/[P]roblem-[S]olving -- emails addressing a matter [Burock] was not able to resolve. [Burock] required guidance from another accountant. ([T.T., 4/3/19 at 53-54, S.R.R. at 54b-55b]; [Appointing Authority] Ex. 9D);
>
> 5. [W]ork [H]abits -- another series of emails indicating that [Burock] had failed to correctly update a distribution list ([T.T., 4/3/19 at 54, S.R.R. at 55b]; [Appointing Authority] Ex. 9E);
>
> 6. [I]nitiative/[P]roblem-[S]olving -- screen prints showing that [Burock] had continued to leave unnecessary or outdated information on financial statements ([T.T., 4/3/19 at 54-55, S.R.R. at 55b-56b]; [Appointing Authority] Ex. 9F); and

7.  [I]nitiative/[P]roblem-[S]olving -- emails demonstrating a failure to research ([T.T., 4/3/19 at 55-56, S.R.R. at 56b-57b]; [Appointing Authority] Ex. 9G).

Comm'n Adj., 12/12/19 at 13-14, S.R.R. at 262b-63b. Baker attested that she discussed the December 2018 interim EPR with Jerosky and Cameron before providing it to Burock. Comm'n Adj., 12/12/19 at 14, S.R.R. at 263b (citing T.T., 4/3/19 at 56, S.R.R. at 57b). Regarding her decision to rate Burock's job performance as "Satisfactory" in the "Work Results" EPR category, Baker testified that "[Burock] improved on the work results category, strictly comparing the EPR ratings based on the [PIP]. The [PIP] indicated there had to be at least one recommendation for streamline efficiency and also timeliness of his work, the timing of the work results category." Comm'n Adj., 12/12/19 at 14, S.R.R. at 263b (quoting T.T., 4/3/19 at 61, S.R.R. at 62b). Further, Baker testified that "we tend to go over with [Burock] . . . items that [he has] been exposed to time after time," and that when "a similar item . . . come[s] up[,] . . . [he is] not able to incorporate the knowledge . . . on a new item." Comm'n Adj., 12/12/19 at 14, S.R.R. at 263b (quoting T.T., 4/3/19 at 63, S.R.R. at 64b). Baker testified that she instituted the PIP prior to issuing the December 2018 interim EPR in order "to explain to [Burock] what areas [he] need[ed] to improve upon and [that] the EPR [was] rated based off of that PIP." Comm'n Adj., 12/12/19 at 15, S.R.R. at 264b (quoting T.T., 4/3/19 at 70, S.R.R. at 71b).

Jerosky testified as to his "frustration" that Burock "[seemed] to not understand the processes," despite attending "numerous" weekly meetings and dealing repeatedly with "the same type of topics." Comm'n Adj., 12/12/19 at 15, S.R.R. at 264b (quoting T.T., 4/3/19 at 89-90, S.R.R. at 90b-91b). Jerosky attested

6

that he discussed his concerns with Baker and recommended that Burock receive "Unsatisfactory" EPR ratings. Comm'n Adj., 12/12/19 at 15, S.R.R. at 264b (citing T.T., 4/3/19 at 90-91, S.R.R. at 91b-92b).

Cameron testified that Burock's job performance required improvement in the areas of job knowledge, problem solving initiative, work results, work habits and communication. Comm'n Adj., 12/12/19 at 15, S.R.R. at 264b (citing T.T., 4/3/19 at 101, S.R.R. at 102b). Cameron further testified that due to Burock's lack of job knowledge and problem solving, he was not given the type of special projects typically assigned to other employees in the Accountant 3 position within the General Accounting Division. *Id.* Cameron attested that Burock received a level one rather than a level two ADLS because he had exhibited some improvement during the rating period. Comm'n Adj., 12/12/19 at 15, S.R.R. at 264b (citing T.T., 4/3/19 at 105-06, S.R.R. at 106b-07b).

Burock asserted that Employer demonstrated "inconsistent logic" in the December 21, 2018 interim EPR by rating him "Unsatisfactory" in the EPR category of "Job Knowledge," yet rating him "Satisfactory" in the category of "Work Results." Comm'n Adj., 12/12/19 at 16, S.R.R. at 265b (quoting T.T., 4/3/19 at 217-18, S.R.R. at 217b-18b). Burock asserted that Employer's rating comments inconsistently noted that he had asked an Accountant 1 for assistance, despite also stating that he rarely asked for help. *Id.* Burock contended Employer maintained a "hostile work environment," asserting that "[p]eople [do not] retire[,] [t]hey take laterals or demotions to get out of this office." Comm'n Adj., 12/12/19 at 16, S.R.R. at 265b (quoting T.T., 4/3/19 at 218, S.R.R. at 219b). Burock testified that he did not ask for help because it would "end up in an EPR." Comm'n Adj., 12/12/19 at 16, S.R.R. at 265b (quoting T.T., 4/3/19 at 218, S.R.R. at 219b). Burock attested

7

that he had suggested a change to interest reporting resulting in significant labor savings. Comm'n Adj., 12/12/19 at 16, S.R.R. at 265b (citing T.T., 4/3/19 at 219-20, S.R.R. at 220b-21b). Further, Burock asserted that his poor work evaluations resulted from "a pattern of bias against [him]," mostly through the[] EPRs, which led to the[] suspensions," and further claimed that EPRs often contain "two identical incidents in different ratings factors, like double dipping . . . ." Comm'n Adj., 12/12/19 at 16, S.R.R. at 265b (quoting T.T., 4/3/19 at 221-22, S.R.R. at 222b-23b).

In its adjudication mailed December 12, 2019, the Commission identified the issue on appeal as whether good cause existed within the meaning of Section 803 of the Civil Service Act[5] to support Employer's disciplinary action. Comm'n Adj., 12/12/19 at 10, S.R.R. at 259b (citing *former* 71 P.S. § 741.803). The Commission noted that under Section 951(a) of the Civil Service Act, Employer bore the burden to present sufficient evidence demonstrating that it possessed good cause to impose the ADLS-1. Comm'n Adj., 12/12/19 at 10, S.R.R. at 259b.

---

[5] Section 803 of the Civil Service Act provided, in relevant part:

> An appointing authority may for good cause suspend without pay for disciplinary purposes an employe holding a position in the classified service. Suspensions, including suspensions pending internal investigation, shall not exceed sixty working days in one calendar year; however, suspensions pending investigation by external agencies may be maintained up to thirty working days after conclusion of the external investigation. No person shall be suspended because of race, gender, religion or political, partisan or labor union affiliation. What shall constitute good cause for suspension may be stated in the rules.

*Former* 71 P.S. § 741.803. Section 3(e) of the Civil Service Act defined the term "appointing authority" to include "the officers, board, commission, person or group of persons having power by law to make appointments in the classified service." *Former* 71 P.S. § 741.3(e) (amended by the Act of June 28, 2018, P.L. 460, No. 71, § 2, effective March 28, 2019).

After "fully review[ing] the testimony and documents introduced at [the] hearing and all other party submissions," the Commission concluded that Employer established good cause to impose the ADLS-1 upon Burock. Comm'n Adj., 12/12/19 at 17, S.R.R. at 266b. The Commission explained:

> [W]e note that the written notice received by [Burock] based the challenged [ADLS-1] solely upon the unsatisfactory performance discussed in his most recent interim EPR . . . . Testimony explaining the ratings stated [] the evaluation was presented by [Burock's] immediate supervisor, Baker, who prepared the ratings; [Burock's] second-level supervisor, Cameron, who met regularly with [Burock], confirmed [his] evaluation and noted his own view that [Burock] was not performing at the same level as other Accountant 3s employed in his Division. Failure to properly execute the duties of his position constitutes good cause for suspension; accordingly, we find [Employer] has presented the required *prima facie* case in support of the challenged disciplinary action.

*Id.* (citing 4 Pa. Code § 105.15(a)).[6] The Commission further found that Burock "failed to either successfully refute Employer's evidence or persuade the Commission that the decision to impose this suspension was improper." Comm'n Adj., 12/12/19 at 18, S.R.R. at 267b. The Commission noted Burock's contention that because "the ADLS[-1] . . . [was] based upon the interim EPR, his written

---

[6] Section 105.15(a) of the Commission's Regulations provides:

> The appointing authority shall go forward to establish the charge or charges on which the personnel action was based. If, at the conclusion of its presentation, the appointing authority has, in the opinion of the Commission, established a prima facie case, the employee shall then be afforded the opportunity of presenting his case.

4 Pa. Code § 105.15(a).

response to that EPR should have been deemed a statement sufficient to challenge the disciplinary action." *Id.* The Commission determined that "[w]hile [Burock] has shown that his view of his work performance differ[ed] from that of Baker, Jerosky and Cameron," Burock failed to demonstrate "that the statements contained in the December [2018] interim EPR were either inaccurate or influenced by improper bias." *Id.* The Commission accordingly concluded that Employer presented credible evidence demonstrating good cause to impose the ADLS-1 on Burock within the meaning of Section 803 of the Civil Service Act. Comm'n Adj., 12/12/19 at 18-19, S.R.R. at 267b-68b (citing *former* 71 P.S. § 741.803). The Commission therefore sustained Employer's imposition of the January 2019 ADLS-1[7] and dismissed Burock's appeal. Comm'n Adj., 12/12/19 at 18, S.R.R. at 268b. Burock thereafter petitioned this Court for review.

---

[7] The Commission noted that Burock received written notice advising him that while not affecting his pay, seniority or other benefits, the ADLS-1 carried the same weight as a one-day disciplinary suspension. Comm'n Adj., 12/12/19 at 1 n.1, S.R.R. at 250b. Thus, the Commission explained that the ADLS-1 would be the equivalent of and treated as a suspension imposed under Section 803 of the Civil Service Act for purposes of the hearing. *Id.* (citing *former* 71 P.S. § 741.803; *Shade v. Pa. State Civ. Serv. Comm'n (Pa. Dep't of Transp.)*, 749 A.2d 1054 (Pa. Cmwlth. 2000)).

10

## II. Discussion

### A. The Parties' Arguments

On appeal,[8] Burock requests that this Court reverse the Commission's December 12, 2019 order. Burock's Brief at 18.[9] Burock challenges the Commission's conclusion that Employer had good cause to impose the ADLS-1, arguing that Employer's purported "reason of good cause does not meet any of the 6 items listed . . . in Section 803."[10] *See id.* at 11. His argument, however, relates to the weight of the evidence and consists largely of invectives leveled at Employer, Burock's supervisors and the Commission.

Burock contends that at the hearing, he provided documentation evidencing submission of his work "with hardly a comment" from supervisors Baker, Cameron or Mike Burns as it went "up the chain of command[.]" Burock's Brief at 6 & 9.[11] Burock further contends that "e[-]mails in the record clearly show

---

[8] Our scope of review of a determination of the Commission is limited to determining whether constitutional rights have been violated, whether an error of law has been committed and whether necessary findings of fact are supported by substantial evidence. *Williams v. State Civ. Serv. Comm'n (State Corr. Inst. at Pine Grove)*, 811 A.2d 1090, 1092 n.1 (Pa. Cmwlth. 2002); *see also* Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704. "[A] court reviewing the penalty imposed on an employee [within the framework of the Civil Service Act] is not to substitute its determination for that of the employer. Rather, the court is merely to make certain that just cause exists and that the appointing authority did not abuse its discretion." *Zuckerkandel v. Dep't of Pub. Welfare*, 415 A.2d 1010, 1011 (Pa. Cmwlth. 1980).

[9] Burock further "requests that a previous case, 1865 C.D. 2019 pertaining to [Commission] case #29985 as well as an additional ADLS level two suspension and a termination be reversed and nullified as all of these disciplines have the same Office of the Budget biases against [him] running through them," alleging a "pattern of retaliation[.]" Burock's Brief at 18. The claims levied by Burock in his separate petition for review at 1865 C.D. 2019 are not before us here.

[10] Burock presumably intends to reference the six examples of reasons providing good cause for suspension listed in the Regulations of the Commission. *See* 4 Pa. Code § 101.21(a).

[11] At the April 3, 2019 hearing, Burock proffered just one e-mail thread into evidence, which was admitted as "AP-4." *See* T.T., 4/3/19 at 6 & 229-30, S.R.R. at 7b & 1230b-31b; *see*

---

11

[his] work was done correctly, on time and with little or no comments from supervisors before being distributed." *Id.* at 12.

Burock claims that "[a]n incident can be anything the raters want it to be," as "they have full discretion," and that "[m]ost of [his] incidents were frivolous gotcha items that most workers would not survive." Burock's Brief at 8. Asserting that "EPR review comments are usually nitpicking, vindictive and purely retaliatory in nature," Burock maintains that "[t]o say after six years, [he] cannot do the work is ludicrous." *Id.* at 11. Further, Burock claims that Employer's pursuit of disciplinary action against him "is nothing but a smear against [him] in retaliation" for alleging that his supervisors committed various misdeeds, and that the "only goal in mind was to belittle him and systematically eventually get rid of [him]." *Id.* at 8 & 11. Burock asserts that "[t]he Commission never even considered the idea of retaliation in their [sic] discussion." *Id.* at 9.

Burock maintains that he "laid out all of the reasons his supervisors could and did go after him with a pure hatred and vengeance" and that a "cesspool of hostility" existed within the office. Burock's Brief at 12. For instance, Burock alleges that Paul Jones, one of his supervisors, threatened to fire him if he "went over

<hr />

*also* Certified Record, Item No. 2, AP-4. This e-mail thread consisted of Burock's e-mail to Matthew J. Updegrove (Updegrove), Employer's Chief of the Division of Employee Relations, and Updegrove's response thereto. Burock testified that he sent this e-mail "after [he] received the ADLS-1," and that he proffered the e-mail at the hearing in order to demonstrate that Employer's disciplinary process was "flawed" and "ridiculous." T.T., 4/3/19 at 229, S.R.R. at 230b. Specifically, Burock testified that Employer deemed his written response to the ADLS-1 unacceptable without explanation, thereby "show[ing] the rigidity of the process," which he asserted is "supposed to be a two-way street[.]" *See* T.T., 4/3/19 at 230, S.R.R. at 231b. Further, Burock attested that Employer did not accord sufficient consideration to his response to the interim EPR. *See* T.T., 4/3/19 at 230, S.R.R. at 231b. However, the Commission explained that Burock's contention was "completely irrelevant," because "an interim EPR is not appealable to the Commission, . . . despite how flawed the process might be." T.T., 4/3/19 at 231, S.R.R. at 232b.

his head," and that "Baker [] had her own axe to grind against [him] when he reported her for inappropriate behavior." *Id.* at 7, 9 & 16.

Averring that he is a certified public accountant with more than 30 years of experience and claiming that his "work was issued to numerous Commonwealth departments and subcontractors for years without issue," Burock questions why Employer "suddenly" deemed his job performance inadequate when he had performed the same job for more than six years "[w]ith not even one unsatisfactory rating ever[.]" *Id.* at 12. Burock also claims that his "work [was] never an issue until in 2017" when a supervisor who was later "forced to relocate to a different state position" was informed "about a 2016 interview [Burock] had for a lateral position in the same division." *Id.* at 7, 12 & 14.

Burock contends that the Commission "failed to give proper weight to the . . . evidence [he] presented and also refused to allow [him] to question [Employer's] witnesses as he wished."[12] *Id.* at 12. Further, Burock contends that he "should not even be on a PIP[,] as it was . . . wholly based on a tossed out EPR." *Id.* at 16.[13] Burock generally "urge[s] the [C]ourt to please read [his] responses (part of the record) to every point brought up in the interim EPR used to arrive at this second ADLS level[-]one suspension," asserting that "[t]he [C]ourt will see the absolute pettiness used to rate [him] under [the] PIP." *Id.*

Employer counters that Burock fails to identify issues that fall within the Court's scope of review, asserting that the question *sub judice* is whether

---

[12] Burock fails to develop his assertion by explaining what pertinent evidence he was prevented from presenting and how such evidence would have altered the outcome of the hearing.

[13] Burock asserts in his ancillary petition for review that "[g]ood cause was not shown by [Employer] to issue [the] suspension," as "[t]he PIP should have never been used as it was based on an EPR that was tossed out by Director." Ancillary Pet. for Rev., 1/31/20 at 2.

13

substantial record evidence exists to support the decision to suspend Burock for unsatisfactory work performance. Employer's Brief at 3, 6 & 9. Further, Employer observes that "courts do not review the Commission's discretionary actions in the absence of [a] showing of bad faith, fraud, capricious action, or abuse of power." *Id.* at 3 (citing *Bowman v. Dep't of Env't Res.*, 700 A.2d 427, 428 (Pa. 1997)).

Employer also maintains that Burock impermissibly seeks appellate review of prior events which fell outside the scope of the April 2019 hearing. *Id.* at 4-5. Specifically, Employer asserts that "[Burock's] brief discusses alleged events dating back to 2017 even though the period of time covered by the Commission's Adjudication was the period from July 25, 20[18] to October 12, 2018, and contains [Burock's] suppositions about the thoughts, motivations, and actions of his supervisors and coworkers that are completely unsupported by any evidence, testimony, or documents in the record of his appeal." *Id.* at 6.

Moreover, Employer contends that an employee's "failure to follow through with his job responsibilities and his failure to meet the performance standards in his work plan, even after he had been advised repeatedly in performance reviews that his performance was unsatisfactory, constitutes the good cause contemplated by the Commission's rules and the case law." *See id.* at 8-9 (quoting *Shade v. Pa. State Civ. Serv. Comm'n (Dep't of Transp.)*, 749 A.2d 1054, 1057-58 (Pa. Cmwlth. 2000)). Thus, Employer maintains that Burock fails to establish that the Commission erred in concluding that Employer had good cause to impose the ADLS-1 on the basis of poor work performance. *See id.* at 6-7 & 11-12.

## B. Analysis

"The only requirement of the [Civil Service] Act with respect to disciplinary suspensions of civil service employees is that they be for good cause."

*Shade*, 749 A.2d at 1057. Section 803 of the former Civil Service Act provided that "[a]n appointing authority may for good cause suspend without pay for disciplinary purposes an employe holding a position in the classified service."[14] *Former* 71 P.S. § 741.803.[15] The appointing authority bears the burden of proving that it has good cause to suspend a civil service employee. *Toland v. State Corr. Inst. at Graterford, Bureau of Corr.*, 506 A.2d 504, 506 (Pa. Cmwlth. 1986).

"It is well established that one's relationship with the classified service turns upon a merit concept." *Kanjorski v. Dep't of Lab. & Indus.*, 403 A.2d 631, 632 (Pa. 1979). Accordingly, "[t]his Court has held that good cause must relate to an employee's competence and ability to perform his or her job duties, . . . or must result from conduct that hampers or frustrates the execution of the employee's duties." *Bruggeman v. State Civ. Serv. Comm'n (Dep't of Corr. SCI-Huntingdon)*, 769 A.2d 549, 552 (Pa. Cmwlth. 2001) (citations omitted); *see also Kanjorski*, 403 A.2d at 632-33 (holding that merit criteria for evaluating disciplinary suspensions under Section 803 of the Civil Service Act "must be job-related and in some rational and logical manner touch upon competency and ability").

We discern no error in the Commission's determination that Employer demonstrated good cause to impose an ADLS-1 on the basis of Burock's unsatisfactory job performance. The Commission's Adjudication is in accord with precedents of this Court sustaining disciplinary action taken against civil service employees under similar circumstances.

---

[14] Section 3(d) of the former Civil Service Act defined the term "classified service" to include various positions in certain government agencies. *See former* 71 P.S. § 741.3(d).

[15] Likewise, Section 2603(c) of Act 71 currently provides that "[e]mployees may only be suspended for good cause." 71 Pa.C.S. § 2603(c).

15

For example, in *Shade*, the Department of Transportation (Department) rated an employee as "unsatisfactory" in eight job performance categories. *Shade*, 749 A.2d at 1056. Roughly two years later, the employee received a final overall rating of "Unsatisfactory," despite exhibiting improvement in certain individual job performance categories. *Id.* at 1055-56. As a result, the Department disciplined the employee by imposing an ADLS carrying the weight of a five-day suspension. *Id.* at 1055. Following the employee's appeal, his immediate supervisor testified at a hearing held by the Commission that he had provided the employee with a work plan containing fifteen performance standards, and that he had conducted quarterly review sessions with the employee to discuss his unsatisfactory job performance. *Id.* at 1055. This Court determined that "[i]t [was] evident from the testimony and evidence that the Department had good cause to discipline [the employee]," reasoning that an employee's "failure to follow through with his job responsibilities and his failure to meet the performance standards in his work plan, even after he had been advised repeatedly in performance reviews that his performance was unsatisfactory, constitutes the good cause contemplated by the Commission's rules and the case law." *Id.* at 1057-58; *see also Tate-Burns v. State Civ. Serv. Comm'n (Erie Cnty. Off. Of Child. & Youth)* (Pa. Cmwlth., No. 1304 C.D. 2015, filed Nov. 10, 2016),[16] slip op. at 7-10, 2016 WL 6647786, at *3-*5 (unreported) (appointing authority met its burden of establishing good cause to suspend a civil service employee, where the employee repeatedly failed to follow record and timekeeping policies, even after the appointing authority issued progressive disciplinary warnings and two corrective action plans).

---

[16] We cite this unreported opinion as persuasive authority pursuant to this Court's Internal Operating Procedures. 210 Pa. Code § 69.414(a).

Likewise, here, Employer presented ample evidence demonstrating Burock's failure to remedy his unsatisfactory job performance despite being offered multiple opportunities for improvement. As recounted in detail above, Employer provided documentary evidence as well as testimony from supervisors who regularly met with Burock and reviewed his work, establishing that Burock repeatedly failed to meet Employer's job performance standards, despite multiple opportunities for improvement. *See* T.T., 4/3/19 at 20-70, 89-91 & 101-06, S.R.R. at 21b-71b, 90b-92b & 102b-07b.

Burock maintains that he did not receive a single "unsatisfactory" EPR rating in approximately six years of employment preceding Employer's issuance of the ADLS-1. *See* Burock's Brief at 7, 12 & 14. However, Burock's contention does not bear upon his unsatisfactory job performance during the rating period, which gave rise to the January 2019 ADLS-1. *See Tate-Burns*, slip op. at 9 (appointing authority had good cause to suspend a civil service employee, where the employee's supervisor testified that despite initially utilizing software designed to track employee time and attendance following implementation of the program, the employee subsequently failed to use the program in compliance with established protocol roughly one year later).

Burock's overarching argument is that the Commission "failed to give proper weight to the . . . evidence [he] presented[.]" Burock's Brief at 12. "It is axiomatic that the Commission, not this Court, has the power to resolve questions of credibility and to weigh the evidence." *Shade*, 749 A.2d at 1056 (citing *Toland*, 506 A.2d at 506); *see also Perry v. State Civ. Serv. Comm'n (Dep't of Lab. & Indus.)*, 38 A.3d 942, 948 (Pa. Cmwlth. 2011) (stating that "[i]n civil service cases, the Commission is the sole fact-finder"). "As such, determinations as to witness

17

credibility and resolution of evidentiary conflicts are within the Commission's sole province, and we will not reweigh the evidence or substitute our judgment . . . ." *Perry*, 38 A.3d at 948.

Of course, this Court is not bound by credibility determinations of the Commission that are unsupported by substantial evidence. *Bruggeman*, 769 A.2d at 553. "When reviewing a Commission decision, we view the evidence, and all reasonable inferences arising from the evidence, in a light most favorable to the prevailing party." *Id.*

Here, however, Employer presented substantial evidence, as discussed above. Moreover, Burock fails to elaborate on his assertion that the Commission improperly weighed the evidence. *See* Burock's Brief at 8-12. "The fact that the Commission gave greater weight to the testimony of [Burock's] supervisor[s] than to the testimony of [Burock] is not an error or abuse of the Commission's fact-finding function." *Shade*, 749 A.2d at 1056. Further, Burock does not directly challenge the Commission's credibility determinations, but rather casts unsubstantiated aspersions against his supervisors in an effort to undermine their testimony. *See id.* (disciplined employee "relie[d] on his own version of the facts as opposed to the findings as made by the Commission based upon its credibility determination," even though "[i]t [was] clear from the Commission's decision that it found credible the testimony from the witnesses of the [appointing authority], not [the employee's] testimony, where there was a conflict").

Further, we note that Burock fails to cite any supporting legal authority in his appellate brief. *See* Pa.R.A.P. 2119(a) ("[t]he argument shall be divided into as many parts as there are questions to be argued; and shall have at the head of each part . . . the particular point treated therein, *followed by such discussion and citation*

18

*of authorities as are deemed pertinent*") (emphasis added); *Commonwealth v. Johnson*, 985 A.2d 915, 924 (Pa. 2009) (internal citations omitted) ("where an appellate brief fails to provide any discussion of a claim *with citation to relevant authority* or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived") (emphasis added); *see also Shade*, 749 A.2d at 1057 (disciplined civil service employee failed to fully develop his argument by generally asserting without elaboration that his employer failed to assess each job rating factor in relation to established standards in evaluating his job performance).

For the foregoing reasons, we agree with the Commission that Employer satisfied its burden of establishing good cause to impose the January 2019 ADLS-1 on the basis of Burock's unsatisfactory job performance. *See Shade*, 749 A.2d at 1057-58; *Tate-Burns*, slip op. at 7-10.

Accordingly, we affirm.

_____
CHRISTINE FIZZANO CANNON, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Frank M. Burock,             :
          Petitioner     :
                      :
       v.              :
                      :
State Civil Service Commission  :
(Office of the Budget),      :   No. 81 C.D. 2020
          Respondent   :

O R D E R

AND NOW, this 13th day of May, 2021, the December 12, 2019 order of the State Civil Service Commission is AFFIRMED.

_____
CHRISTINE FIZZANO CANNON, Judge